WEIL, ROTH & CO. *v.* MAYOR AND ALDERMEN OF NEWBERN.

## (*Jackson.*   April Term, 1912.)

1.  CONSTITUTIONAL LAW.  Statute is not unconstitutional as broader in its body than in its caption where restriction in terms in caption is not violated in fact in body.

   A statute (Acts 1907, ch. 117), whose caption is entitled "An act to amend the charter of the town of Newbern and all the acts heretofore passed amendatory thereof, so as to empower the mayor and aldermen of said town to issue. coupon bonds in an amount not to exceed fifty thousand dollars in excess of the present bonded indebtedness of the town," and whose body authorizes the issuance of fifty thousand dollars of coupon bonds, when authorized by a majority vote of the qualified voters of the said town, but omits the restriction in the caption that the bond issue is not to exceed fifty thousand dollars in excess of the present bonded indebtedness of the town," is not unconstitutional upon the ground that the body of the act is broader than the caption in violation of the constitutional provision (art. 2, sec. 17) that no law shall embrace more than one subject, that subject to be expressed in the title, because the body is not broader than the caption, for the reason that not more than fifty thousand dollars of bonds can be issued under the act, and any bonds issued must be "in excess of the present bonded indebtedness," or existing indebtedness, and "the present bonded indebtedness" refers to any such indebtedness existing at the passage of the act.  (*Post, pp.* 231-233,  243-244.)

   Acts cited and construed:  Acts 1907, ch. 117.

   Constitution cited and construed:  Art. 2, sec. 17.

2.  SAME.  Statute authorizing bond issue upon vote of people and empowering board of mayor and aldermen to hold any number of elections is not unconstitutional as conferring a special privilege on mayor and aldermen.

   The statute (Acts 1907, ch. 117), authorizing the mayor and aldermen of a certain incorporated town to issue certain bonds

when ordered by a vote of a majority of the qualified voters of the town "at any time and as many times as the mayor and aldermen may deem necessary," is not unconstitutional as conferring a special privilege because of the quoted language; for no special privilege or distinction is conferred upon the board of mayor and aldermen, but only a power is reserved to them as representatives of the people of the town, that is, to the town itself in its collective capacity. (*Post, pp.* 232, 233, 244, 245.)

Acts cited and construed: Acts 1907, ch. 117, sec. 3.

3. SAME. Same. Statute authorizing municipal bond issue upon majority vote at election to be ordered at the discretion of the board of mayor and aldermen is not unconstitutional.

The statute (Acts 1907, ch. 117), vesting in the mayor and aldermen of a certain incorporated town the power and authority to issue certain bonds when ordered by a vote of a majority of the qualified voters of the town "at any time and as many times as the mayor and aldermen may deem necessary," is not unconstitutional and invalid because conferring upon the mayor and aldermen the right to determine whether they will submit to the voters the question of the issuance of bonds and the time when the vote shall be taken, because the power to issue bonds is special, and is usually conferred upon municipalities by special acts, and because the limited power of determining whether a submission shall be made, and when, is a mere incident of the power conferred to issue bonds. (*Post, pp.* 232, 233, 245, 246.)

Acts cited and construed: Acts 1907, ch. 117.

Case cited, distinguished, and approved: Malone v. Williams, 118 Tenn., 437.

4. MUNICIPAL BONDS. Statute authorizing issuance of bond is construed to authorize their sale, though such statutes must be strictly construed.

The statute (Acts 1907, ch. 117), vesting in the mayor and aldermen of a certain incorporated town the power and authority to issue certain bonds, not to be issued or used, unless so

Weil v. Newbern.

ordered by a vote of a majority of the qualified voters of such town, clearly indicates that the bonds should be issued and used, that is, sold, in case the voters should so order at the election referred to, and the statute is so construed, although acts authorizing the issuance of municipal bonds must be strictly construed. (*Post, pp.* 246, 247.)

Acts cited and construed:   Acts 1907, ch. 117.

5. **SAME.    Election as to question of their issuance must be held by commissioners of elections, and not by sheriff.**

The statute (Acts 1897, ch. 13), providing for the appointment of commissioners of elections for every county having a prescribed census population, and requiring the commissioners, prior to every election, to appoint judges and clerks, and empowering the commissioners to appoint officers at each voting place, and divesting the county courts, mayors, boards of mayor and aldermen, and sheriffs in said counties of the power to appoint officers of election, embraces all kinds of elections, municipal as well as State and county, in the counties of the prescribed population, and an election held in an incorporated town, to determine the question of the issuance of bonds by it, must be held by the commissioners of elections, and not by the sheriff. (*Post, pp.* 233, 234, 247-249, 250.)

Acts cited and construed:   Acts 1897, ch. 13.

6. **ELECTIONS.    Held under Acts 1897, ch. 13, before Acts 1907, ch. 436, became operative by appointment of commissioners thereunder.**

The statute (Acts 1907, ch. 436), creating commissioners of elections in every county, and becoming operative only after the appointment of the commissioners thereunder, does not affect an election held prior to that time, and such prior election is properly held and conducted in the manner prescribed by Acts 1897, ch. 13.   (*Post, pp.* 247, 250.)

Acts cited and construed:   Acts 1897, ch. 13; Acts 1907, ch. 436.

Cases cited and approved:   Davis v. Rogersville, 107 Tenn., 588; Lindsay v. Allen, 112 Tenn., 648.

126  Tenn.—15

7. **MUNICIPAL CORPORATIONS.** Statutory charter empowering sheriff to hold elections of certain officers does not authorize him to hold election as to bond issue, when.

The statutory charter of a town (Acts 1901, ch. 450), purporting (in section 6) to confer upon the sheriff the power of conducting the elections of mayor, aldermen, recorder, and marshal of the town, does not control an election in the town to determine the question of the issuance of bonds; but such election is properly conducted in the manner prescribed by Acts 1897, ch. 13, as shown in headnotes 5 and 6. (*Post, p.* 250.)

Acts cited and construed: Acts 1897, ch. 13; Acts 1901, ch. 450, sec. 6.

8. **SAME.** Amendment of charter, by extending corporate limits does not affect manner of holding elections, when.

The statute (Acts 1907, ch. 558), amending the charter of a town, by extending its limits, does not affect the manner of holding an election in the town to determine the question of the issuance of bonds, especially in the absence of evidence that any additional voters lived in the added territory, or that the lands embraced therein were not owned by residents within the previous corporate limits. (*Post, p.* 250.)

Acts cited and construed: Acts 1907, ch. 558.

9. **MUNICIPAL BONDS.** Election as to question of their issuance must be conducted according to law, and held by the prescribed officers, or the bonds cannot be issued.

Under a statute (Acts 1907, ch. 117), vesting in the mayor and aldermen of a certain incorporated town the power to issue certain bonds, but providing (in section 3 thereof) that the bonds shall not be issued or used unless so ordered by a vote of a majority of the qualified voters of the town, said officers have no authority to issue such bonds unless ordered by an election conducted according to law, and an election held by a person without authority to do so is invalid, and does not authorize the issuance of bonds, although a majority of the voters voted in such election for the issuance of the bonds. (*Post, pp.* 250, 251.)

Weil v. Newbern.

Acts cited and construed:   Acts 1907, ch. 117, sec. 3.

Cases cited and approved:   State v. Taylor, 108 N. C., 196; Hughes v. Roberts, 142 Ky., 142; Supervisors v. People, 25 Ill., 181; Supervisors v. Cook, 38 Ill., 44; Railroad v. Virden, 104 Ill., 339.

10. SAME.    Recital of essential preliminaries by signers appointed by body authorized to issue bonds is not binding on city in favor of purchasers otherwise bona fide.

The recitals in bonds of an incorporated town, signed by its officers authorized by the enabling act to issue the bonds, that all the essential preliminaries have been complied with, are binding on the town in favor of *bona fide* holders of the bonds, who may rely upon such recitals; but where the bonds were signed by persons other than those authorized by the enabling act to issue them, though such signers were properly appointed for that purpose by the body having power, under the enabling act, to issue them, the untrue recitals are not binding upon the town, and a purchaser, though otherwise a *bona fide* purchaser, must determine at his peril whether the essential preliminaries have been complied with, so as to make the bonds valid obligations; for there can be no innocent purchaser or holder of such bonds.   (*Post, pp.* 251-266.)

Cases cited and approved:   State v. Anderson Co., 8 Bax., 249; Barnard v. Hawkins Co., 2 Shannon's Cases, 97; Shelby Co. v. Jarnagin, 3 Shannon's Cases, 179; Carriger v. Morristown, 1 Lea, 243; Nelson v. Haywood Co., 87 Tenn., 781; Johnson City v. Railroad, 100 Tenn., 138; Rondot v. Rogers Township, 99 Fed., 202, 212, 39 C. C. A., 462, 472.

11. SAME.    Same.    Purchasers of bonds signed by those appointed for that purpose by a body empowered to issue them are chargeable with notice of voidness of election recited to be valid.

Where the enabling act (Acts 1907, ch. 117), authorizing a certain incorporated town to issue certain bonds, vested in the mayor and aldermen of said town the power and authority to

Weil v. Newbern.

issue such bonds when ordered by a vote of a majority of the qualified voters of said town, and the bonds, issued and signed by the mayor and clerk of said town, under the proper authority of a city ordinance, and not signed by the mayor and aldermen authorized by the enabling act to issue them, recited that they were issued or ordered by a vote of a majority of the qualified voters at an election held under and in accordance with an ordinance; and an ordinance passed after the election recited that the election was held by the sheriff of the county in which the said town was located, it was held that the purchasers of the bonds, thought otherwise *bona fide*, were chargeable with notice of the fact that the election was void, because conducted by the sheriff, instead of the commissioners of elections of the county, as provided for by Acts 1897, ch. 13, and such town could, as against such holders, contest the validity of the bonds, and it was not estopped so to do by reason of the recital of compliance with all essential preliminaries; for there can be no innocent purchaser or holder of such bonds. (*Post, pp.* 241-244, 251-266.)

Acts cited and construed:. Acts 1897, ch. 13; Acts 1907, ch. 117.

Cases cited and approved are the same as under the preceding headnote.

12. **MUNICIPAL CORPORATIONS.**    Powers of mayor depend upon charter of incorporation.

The powers of the mayor of a municipality depend wholly upon the provisions of the charter thereof, or the act of incorporation. (*Post, pp.* 260, 261.)

13. **SAME. Power to issue and sign municipal bonds must be specially conferred, and cannot be inferred from power to make ordinary contracts.**

Under the statutory charter of a town (Acts 1901, ch. 450), providing for the election of a recorder thereof to perform (section 11) certain specified duties, and "such other duties as the board may impose upon him;" and (section 13) empowering the board of mayor and aldermen of the town to make all

proper contracts necessary for corporate purposes, to be made in the name of the corporation, "and signed by the mayor and recorder," and (section 14) requiring the mayor and recorder to sign deeds conveying the corporation property, and under Acts 1903, ch. 220, sec. 2, abolishing the office of recorder and devolving most of the duties of the recorder upon the mayor, and some of them upon the city clerk, and under Acts 1907, ch. 558, sec. 3, restoring the office of recorder and reinvesting the recorder with all the original duties and privileges, the mayor and recorder or city clerk had and have no authority to issue negotiable bonds of the town; for the authority to make contracts refers to ordinary contracts necessary in the usual course of the corporate life, and the power to issue and sign municipal bonds must be specially conferred. (*Post, pp.* 260-265.)

Acts cited and construed: Acts 1901, ch. 450, secs. 11, 13, 14; Acts 1903, ch. 220, sec. 2; Acts 1907, ch. 558, secs. 3, 5.

Constitution cited and construed: Art. 2, sec. 29.

Cases cited and approved: Pulaski v. Gilmore, 3 Shannon's Cases, 115; Colburn v. Railroad, 94 Tenn., 43; Richardson v. Marshall Co., 100 Tenn., 348, 349; Tensas Par. Police Jury v. Britton, 15 Wall., 566; Claiborne Co. v. Brooks, 111 U. S., 400; Concord v. Robinson, 121 U. S., 165; Kelley v. Milan, 127 U. S., 139; Norton v. Dyersburg, 127 U. S., 160; Hill v. Memphis, 134 U. S., 198; Merrill v. Monticello, 138 U. S., 673; Brenham v. Bank, 144 U. S., 173; Folsom v. School Directors, 91 Ill., 402; Lippincott v. Pana, 92 Ill., 24; Coquard v. Oquawka, 192 Ill., 355; Swanson v. Ottumwa, 131 Iowa, 540; Furniture Co. v. Greenville, 146 Ala., 559; State v. Lafayette, 49 La: Ann., 1748; Parsons v. Monmouth, 70 Me., 262; Knapp v. Hoboken, 39 N. J. Law, 394; Waxahachie v. Brown, 67 Tex., 519; Austin v. Nalle, 85 Tex., 520.

Cases cited and disapproved: Adams v. Memphis, 2 Cold., 645; State v. Anderson, 8 Bax., 249.

14. SAME.   Payment of interest on void bonds for which con-
sideration was received is not a ratification of void bonds
repudiated by the town.

Where an incorporated town, authorized by statute to issue cer-
tain bonds when ordered by a majority of the qualified voters,
issued the bonds under a void election, and received full con-
sideration for one series of the bonds, and continued to pay
interest on such series, the issuance of another series of the
bonds, for which the town received no consideration, was not
thereby ratified by the town. (Post, p. 266.)

Cases cited and approved:   Land Co. v. Jellico, 103 Tenn., 320;
Watterson v. Nashville, 106 Tenn., 410.

## FROM DYER.

Appeal from the Circuit Court of Dyer County.—
JOS. E. JONES, Judge.

DRAPER & RICE and WM. R. COLLINS, for Weil, Roth
& Company.

ALBERT W. BIGGS and W. H. SWIGGART, for Newbern.

MR. JUSTICE NEIL delivered the opinion of the Court.

This action was brought, originally before a justice
of the peace of Dyer county, on five coupons, clipped
from sundry bonds purporting to have been issued by
the town of Newbern.   Each coupon was for the sum of
thirty dollars.   Judgment was rendered on them, from
which an appeal was prayed to the circuit court.   In
that court a plea of non est factum was interposed by
defendant.   The suit was tried before the judge of
the circuit court without the intervention of a jury.

Pending the trial the plaintiffs dismissed the action as to all of the coupons except coupon No. 3, clipped from bond No. 4. The plaintiffs thereupon prayed and obtained an appeal to this court; one of the questions involved being the constitutionality of a statute of this State.

While the amount directly involved in the present suit is only thirty dollars, the questions arising on the record necessarily involve the validity of bond No. 4 for $1,000, and of the whole issue of $50,000 of which it was a part; there being fifty bonds, each for the sum of one thousand dollars.

These bonds purported to have been issued under the authority of chapter 117, Acts of 1907, which is as follows:

"An act to amend the charter of the town of Newbern and all the acts heretofore passed amendatory thereof, so as to empower the mayor and aldermen of said town to issue coupon bonds in an amount not to exceed fifty thousand dollars in excess of the present bonded indebtedness of the town.

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that the charter of the town of Newbern and all acts amendatory thereof be, and the same are hereby, so amended that the mayor and aldermen of said town shall be vested with power and authority to issue fifty thousand dollars of coupon bonds of said town as follows: To issue twenty-five thousand dollars of said bonds for the purpose of erect-

ing and furnishing school buildings for the benefit of the children of school age in said town, ten thousand dollars of coupon bonds to improve and extend the water and light system of said town, and fifteen thousand dollars for paving or graveling the streets of said town.

"Sec. 2.   Be it further enacted, that all bonds issued under this act shall be of such denomination, bear such rate of interest, not exceeding six per cent. per annum, and be due in such time not less than twenty—nor more than thirty—years from date, and be payable at such times and places as the mayor and aldermen may determine.

"Sec. 3.   Be it further enacted, that the said bonds shall not be issued or used unless so ordered by a vote of a majority of the qualified voters of the town of Newbern at any time and as many times as the mayor and aldermen may deem necessary.

"Sec. 4.   Be it further enacted, that this act take effect from and after it passage, the public welfare requiring it.

"Passed March 13, 1907.

"JOHN T. CUNNINGHAM, JR.,

"Speaker of the House of Representatives.

"E. G. TOLLETT,

"Speaker of the Senate.

"Approved March 18, 1907.

"MALCOLM R. PATTERSON, Governor."

It is conceded on both sides that this act is not good as an amendment to the charter, but can only be considered as an independent enabling act.

Weil v. Newbern.

It is attacked by defendant as unconstitutional, because in violation of article 2, section 17, of the constitution of 1870. It is said that the body of the act is broader than the caption, in that the caption indicates a bond issue "not to exceed fifty thousand dollars in excess of the present bonded indebtedness of the town," while the body of the act contains no such restriction.

It is also insisted that the act is unconstitutional, because under the provisions of section 3 the citizens of Newbern are deprived of a property right without due process of law, in violation of article 1, section 8, and article 2, section 29, of the constitution; the property right involved being the right to vote, and to have that vote given due weight. It is insisted that under this section the citizens of Newbern could be harassed by repeated elections, at the instance of the board of mayor and aldermen, and that nothing would ever be settled until a vote should be given in accordance with the views of the board, either an affirmative or a negative vote.

These and other questions made upon the act will be disposed of in their due order.

An election was ordered by the board of mayor and aldermen, to obtain the sense of the people. The returns of this election showed a large majority in favor of the issuance of the bonds. This election was held by the sheriff of Dyer county. The defendant insists that the sheriff had no legal authority to hold such election, that the election was therefore a void proceeding, and hence that a necessary condition precedent to the issuance of the bonds was not complied with. It is in-

sisted that the commissioners of election of Dyer county had the sole authority to hold the election.

Acting under the belief that an election had been lawfully held, the board of mayor and aldermen on the 19th of April, 1907, passed the following ordinance:

"An ordinance to provide for the issuance of fifty thousand dollars in coupon bonds.

"Whereas, the election heretofore ordered by the mayor and aldermen of Newbern to be held to ascertain the will of the qualified voters of the town of Newbern, Tennessee, as to whether or not the mayor and aldermen should issue the fifty thousand dollars in coupon bonds as provided for in the act of the general assembly of the State of Tennessee, passed March 13th, 1907, and approved March 18th, 1907, being House Bill No. 301, was held on the 16th day of April, and resulted in showing that a majority of all qualified voters in said town favored the issuance of bonds as provided for in said act of the general assembly, the result of said election having been duly and regularly certified by the sheriff of Dyer county, Tennessee, under whose supervision the said election was held; and whereas, it is deemed necessary and proper to issue at once bonds to the amount of fifty thousand dollars, twenty-five thousand dollars to be used in erecting and furnishing school buildings, fifteen thousand dollars to be used in graveling or paving the streets, and ten thousand dollars for improving and extending the water and light system of said town:

"Therefore, be it ordained by the mayor and aldermen of Newbern that said bonds be issued and sold as follows: Twenty-five coupon bonds of the denomination of one thousand dollars, the face value thereof amounting to twenty-five thousand dollars, the proceeds to be used exclusively for the erection and furnishing school buildings; fifteen coupon bonds of the denomination of one thousand dollars, the face value thereof amounting to fifteen thousand dollars, to be used exclusively for graveling or paving the streets; and ten coupon bonds of the denomination of one thousand dollars, amounting in the aggregate to ten thousand dollars, the proceeds thereof to be used exclusively for improving and extending the water and light system of said town, said bonds to bear interest at the rate of five per cent. per annum, payable semiannually, and said bonds shall be due thirty years from date of bonds, and payable at such place or places as designated in face of bond.

"Be it further ordained that the bonds so to be issued shall be signed by the mayor and clerk of said board of mayor and aldermen, and said bonds shall be sold to the highest bidder for cash, and not less than par or face value, and a committee of three, including the mayor, shall be the agents of the board of mayor and aldermen to secure bids for making sale of said bonds.

"Be it further ordained that the coupons to be attached to said bonds to be issued as hereinbefore ordered shall at maturity be receivable for all taxes and dues to the town.

"Be it further ordained that this ordinance take effect from and after its passage, the public welfare requiring it.

"Passed April 19th, 1907.

                              "H. J. HARRIS, Clerk.

"Approved April 19, 1907.

                              "H. J. SWINDLER, Mayor."

On the 10th of June, 1907, the foregoing ordinance was so far amended as to strike out the words "thirty years" and "five per cent."

On August 27, 1907, the following additional ordinance was passed:

"An ordinance fixing the form and date of the $25,000 school bonds, $15,000 street bonds, and $10,000 water and light bonds of the town of Newbern.

"Section 1. Be it ordained by the mayor and aldermen of Newbern, Tennessee, that the bonds issued by an ordinance of said board of mayor and aldermen, duly passed on the 19th of April, A. D. 1907, consisting of twenty-five bonds, the face value thereof amounting to twenty-five thousand dollars, for the purposes of erecting and furnishing school buildings, fifteen bonds the face value thereof amounting to fifteen thousand dollars, for the purpose of graveling and paving the streets, and ten bonds, aggregating ten thousand dollars, for the purpose of improving and extending the water and light system of said town of Newbern, in the county of Dyer and State of Tennessee, shall be, and the same are hereby, ordered to be dated, the first day of September, A. D. 1907.

"Sec. 2.  Be it further ordained that said bonds and the coupons thereto attached shall be respectively in form substantially as follows:"

The ordinance then proceeded to set the form of the bonds and of the coupons.

Bond No. 4 was one of the issue of $25,000 of school bonds.  This bond was in the following words and figures:

"Know all men by these presents, that the mayor and aldermen of Newbern, in the county of Dyer and State of Tennessee, a municipal corporation duly organized under the laws of said State, acknowledge themselves to owe and for value received, hereby promise to pay to bearer the sum of .one thousand dollars, lawful money of the United States of America, on the (third) *first* day of September, A. D. 1927, together with interest on said sum from the date hereof, until paid, at the rate of six per centum per annum, payable semiannually on the first day of March and of September in each year, upon presentation and surrender of the interest coupons hereto attached, as they severally become due.    Both principal and interest are payable *at the Hanover National Bank* in the city of New York, and State of New York, and for the prompt payment of this bond, both principal and interest, the full faith, credit and *revenues,* of said town are hereby irrevocably pledged.

"This bond is one of a series of twenty-five bonds, of like date and tenor, aggregating $25,000, issued by the mayor and aldermen of Newbern for the purpose of erecting and furnishing a school building in and for the

town of Newbern, pursuant to and in full compliance with the provisions of an act of the general assembly of the State of Tennessee, entitled 'An act to amend the charter of the town of Newbern so as to authorize the mayor and aldermen of said town to issue fifty thousand dollars in coupon bonds, to erect and furnish school buildings, gravel or pave the streets and improve and extend the water and light system of the town,' passed March 13, 1907, approved March 18, 1907, and as ordered by a vote of a majority of all the qualified voters of the town of Newbern, at an election duly and legally held by order of the *board of mayor and aldermen* of said town, on the sixteenth day of April, A. D. 1907, and under and in accordance with an ordinance duly passed by the said board of mayor and aldermen at a meeting thereof duly and regularly called and held on the nineteenth day of April, A. D. 1907.

"And it is hereby certified and recited, that all acts, conditions and things required to be done precedent to and in the issue of this bond have been properly done, happened and been performed in regular and due form as required by law. *Also that the total debt of said town, including this issue of bonds, does not exceed any limit of indebtedness prescribed by the laws of this State, and that provision for the levy of an annual tax sufficient to pay the principal of and interest upon said bonds, as the same respectively become due has been made and will be duly levied upon all the taxable property in said town in the manner required by law.*

"In testimony whereof, the said board of mayor and aldermen of the town of Newbern have caused this bond to be signed by the mayor and countersigned by the clerk of the said board of mayor and aldermen thereof, with corporate seal attached, this first day of September, A. D. 1907.

"H. J. SWINDLER, Mayor.
"Countersigned:  S. J. HARRIS, Clerk."

Attached to this bond were numerous interest coupons.

The parts of this bond italicized indicate words and clauses therein which do not appear in the form of bond authorized by the ordinance of August 27, 1907, and those in parenthesis indicate words in the form prescribed which do not appear in the bond as issued.

It is insisted in behalf of defendant that these variances between the form prescribed by the ordinance and that actually used by the mayor and the town clerk in issuing made the bonds void.  It is insisted in behalf of the plaintiff that the variances were immaterial, or at all events harmless.

Plaintiffs further insist that they were innocent purchasers, and that the defendant is bound by the various recitals which were within the form prescribed by the ordinance of August 27, 1907; all of the recitals being within that form, except the ones appearing in italics in the bond above copied.

The whole issue of $50,000 of bonds was sold to W. J. Hays & Son of Cleveland, Ohio.  As a part of the contract they were to pay the cost of printing.  They asked

of the mayor the privilege of changing the form so as to better harmonize with the form of bonds they had been accustomed to deal in. The mayor consented without consulting the board, and the changes were made which we have indicated by italics and parenthesis. Before the bonds were printed, the mayor and the clerk sent forward their signatures on a slip of paper, so that they could be lithographed on the coupons. When the bonds and coupons had been thus prepared, the blanks were conveyed to Newbern by one Helton, an agent of W. J. Hays & Son, for signature. They were signed by the mayor and the clerk, without word of question concerning the changes that had been made, and immediately enveloped in an express package directed to W. J. Hays & Son, at Cleveland, Ohio.

The board of mayor and aldermen had appointed a committee to negotiate the sale of the bonds. The contract made with W. J. Hays & Son was to this effect: For the $25,000 of bonds issued for street purposes and water and light purposes they were to give an acceptance for the price agreed on, a sum slightly over par. This was given, and was subsequently, after some delay and difficulty, realized on. For the $25,000 of school bonds they were to issue a certificate of deposit for the price agreed on, at six per cent. at four months. This certificate was issued, but was never paid. When the money was demanded, it was found that W. J. Hays & Son were not bankers, but only bond brokers, and that they were wholly insolvent.

Having obtained value received for the $25,000 of street and water and light bonds, the town of Newbern has never made any question as to these, but has continued to pay the interest on them to the holders— persons other than W. J. Hays & Son.

The town refused to pay the school bonds, or any interest thereon, on the ground that it had been defrauded by W. J. Hays & Son, in the manner stated. When suit was brought, the town made the other defenses already referred to.

The plaintiffs, as already stated, contend that they are innocent holders. The facts pertaining to this subject are as follows: There is no evidence showing to whom W. J. Hays & Son sold the bonds. The first clear fact after the bonds passed into the hands of W. J. Hays & Son is that a lot of $5,000 of this issue was found in the hands of a bank, the Citizens' National Bank of Pottstown, Pa. That bank offered this lot to Rhoads & Co., a firm of brokers in New York, and that firm offered them to plaintiffs. Plaintiffs purchased them, paying full value, and sold them again to a charitable organization known as "The Maccabees," which also paid full value. When the coupons originally sued upon in this case became due, they were presented to the town of Newbern for payment, and payment was refused. Being informed of this by "The Maccabees," the plaintiffs took up the coupons, paid for them in cash, and brought the present suit to protect the sale they had made to their vendee. This was in accordance with their rule of business, which is to assume the burden

126  Tenn.—16

of any litigation on any bonds they have sold to their customers, when the validity of such bonds is questioned.

Before plaintiffs purchased the $5,000 of bonds from the New York brokers, they called for the opinion of an attorney as to their validity. The New York brokers furnished them with the opinion of a firm of lawyers in Cleveland, Ohio, which had been furnished by these lawyers to W. J. Hays & Son. The opinion expressed was that the bonds were valid. However, before completing the purchase, they sent bond No. 4 to Mr. Shumate, cashier of one of the Newbern banks, requesting him to ascertain whether the signatures were genuine. This was the single inquiry submitted to him. He accordingly presented the bond to the mayor and the clerk, asking only concerning the genuineness of their signatures. They both admitted that the signatures were genuine. The mayor, at the time, started to tell Mr. Shumate the facts concerning the school bonds. Mr. Shumate stopped him, saying he only wished to know whether the signatures were genuine. Mr. Shumate explains this in his testimony by saying that he was instructed to make inquiry upon only the one point, and he considered that he was doing his duty when he made response to that inquiry. He admits that he knew, because it was general talk among the business men of the town, that the town was in trouble about the school bonds. The inference is a fair one that he knew the facts concerning the transaction. He says he gave the plaintiffs no information on this point, not only because

Weil v. Newbern.

it was beyond the scope of their inquiry, but also because he did not know what would be the final outcome, and he did not wish to embarrass any one by making statements on the subject.

There is no evidence that plaintiffs had any actual knowledge of the method by which W. J. Hays & Son had procured these bonds. There is abundant evidence to the contrary.

There is no evidence that the Pottstown bank, or the New York brokers, had any notice of any fraudulent conduct on the part of W. J. Hays & Son in the procurement of the bonds, or that they did not.

The trial judge, as already stated, decided the controversy in favor of the defendants, and the plaintiffs thereupon appealed, and assigned errors.

We shall now consider such of the contentions as we think necessary or proper for a decision of the cause in this court.

There is nothing in the point that the act in question is void because in violation of article 2, section 17, of the constitution.

"The present bonded indebtedness" mentioned in the caption refers to any such indebtedness existing at the date of the passage of the act. Of course, any bonds, at all, issued under the act, must be in excess of existing indebtedness, if there was any such indebtedness. Therefore the authority indicated in the caption was simply to issue $50,000 of bonds, and no more. The body of the act went no further, and was well within the caption.

The argument is made that, if any other bonds had been issued after the passage of the act and before the issuance of bonds thereunder, the bonds that could be issued under the act, according to the caption, would be $50,000 less the intervening amount so issued under the supposed other act, while under the body of the act the whole $50,000 could be issued. We may dismiss this argument with the single remark that it presents a purely fanciful situation, since it does not appear that any such intervening bonds issued, although it does appear that there were other outstanding bonds formerly issued.

The contention based on section 3 of the act is equally unfounded. That section reads:

"The said bonds shall not be issued unless so ordered by a vote of the majority of the qualified voters of the town of Newbern, *at any time and as many times as the mayor and aldermen may deem necessary.*"

The objection is founded on the language which we have italicized for convenience of reference. The argument based on this language is that a vote upon a bond proposition submitted is, according to the act, binding upon every one but the board of mayor and aldermen; that a special privilege or distinction is thus conferred upon them, not enjoyed by their fellow citizens; that the power thus given to order additional election nullifies the elective franchise of the other citizens of the town, and thus deprives them of a right of property without due process of law. The argument overlooks the fact that the power reserved to the board of mayor

and aldermen is not to them as individuals, but as representatives of all of the people of the town; that is, to the town itself in its collective capacity. The power given is simply that of making a second, or third, or other submission of the matter to the vote of the people in case of an adverse decision upon any prior vote. It is said this is a power conferred upon the board to harass the people by numerous elections, and thereby compel them to submit finally to the issuance of bonds to rid themselves of the importunity of their officers. It is even said that after a favorable vote the board, being of a different opinion as to the advisability of the issuance of bonds, might cause a new election to be held for the purpose of reversing the former election. Grant that such an unreasonable course might be pursued by the current board, this would not make the act void, since the people would have the right to protect themselves against such conduct by the election of a new set of officers.

As to the next point, we see no objection to the existence of a power in the board of mayor and aldermen of any city to determine whether they will submit to the voters of such municipality the question of issuing bonds, or to the existence of the power to fix the time when such vote shall be taken; and in view of this particular matter it is not material that recourse may be necessary to some other official, as to the sheriff, or election commissioners, to make the ordinance effective by the actual holding of the election. The power to issue bonds is special, and is usually conferred upon munici-

palities by such acts. The limited power of determining whether a submission shall be made, and when, is a mere incident of the power conferred to issue bonds. The conferment of such power does not fall within the doctrine of *Malone* v. *Williams,* 118 Tenn., 437, 103 S. W., 798, 121 Am. St. Rep., 1002. Such power is quite distinct from the power exercised in actually holding the election. This question we shall consider further along.

It is insisted that the act (chapter 117, Acts of 1907) did not confer the power to issue the bonds, even if constitutional. This is based upon the proposition of law that acts authorizing the issuance of bonds must be strictly construed, and upon the fact that this act contains no express authority, in terms, directing the issuance of the bonds when voted by the people. Such a construction sticks in the bark. For what purpose are bonds authorized, except to be issued and sold? The power to issue and sell is necessarily implied in the act. Moreover, there is language used in the first section which shows the legislature intended to confer such power expressly. That section declares: "The mayor and aldermen of said town shall be vested with power and authority to issue fifty thousand dollars of coupon bonds of said town as follows," etc. The third section provides that "the bonds *shall not be issued or used, unless so ordered by a vote* of the majority of the qualified voters of the town of Newbern," etc., clearly indicating that they should be issued and used—that is, sold—in case the voters should so order at the election referred

to.  Necessarily, when so issued, the faith and credit of the town were pledged for their payment.  They could have no other security or means of payment.

We now have reached the point where we must determine whether a legal election was held, and, if illegal, whether the bonds are, notwithstanding, valid in the hands of innocent purchasers.

First, as to the election:

No power was conferred upon the board of mayor and aldermen to hold the election, and they did not undertake to do so.  The election was held by the sheriff of Dyer county.  The defendant insists that he had no power to do so, but that it should have been held by the commissioners of election of the county.  The settlement of this question depends upon the construction of certain statutes, and particularly chapter 13, Acts of 1897. It is also insisted that chapter 436, Acts of 1907, chapter 450, Acts of 1901, and chapter 558, Acts of 1907, have a bearing upon the question.

Chapter 13, Acts of 1897, is entitled: "An act to secure pure elections by creating boards of commissioners of election in counties having a population of less then 50,000 inhabitants, computed by the federal census of 1890, and any subsequent federal census, and defining the duties and powers thereof."

Dyer county, within which Newbern is situated, falls within the limit of 50,000 population.

It is insisted by the defendants that the election should have been held under this act.  The plaintiff in

sists that this act has no reference to municipal elections, but only to general State and county elections.

This is the question to be settled by a construction of the act.

This act provides [section 1] that, for every county in the State falling within the population limit prescribed by the caption, the governor shall appoint a board of three persons to be known as the "commissioners of election;" that (section 2) "it shall be the duty of said commissioners of election, within sixty days prior to *every election* to be held in their county, and in due time therefor, to appoint three judges for each and every voting place in their county, to superintend the election at the precinct or voting place for which said judges shall be appointed. . . . The said commissioners of election shall appoint two clerks of election for *each and every voting place* in their county. They shall be appointed not more than sixty days prior to *every election* in said county in due time to act thereat. . . . The said commissioners of election are also hereby authorized and empowered to appoint the officer or officers of election *at each voting place to the exclusion of the sheriff or other person or officer heretofore possessing said power of appointment. The county courts, mayors, boards of mayor and aldermen, and sheriffs of and in the said counties within the provisions of this act, are hereby divested of the authority to appoint judges or inspectors and clerks of elections and officer or officers.* . . . It shall be the duty of the officer holding the election, to deliver the polls or returns of the

election, sealed, as received, to the said commissioners of election, not later than twelve o'clock m. on the first Monday after the election. On the first Monday after the election, it shall be the duty of the commissioners of election to compile the said polls or returns at the courthouse, and to certify in writing signed by at least two of them, the result as shown by said polls or returns, and to deliver to each person elected a certificate of election."

We think it quite clear, especially from the language which we have italicized, that it was the purpose of the legislature to embrace within the scope of the act all kinds of elections, municipal as well as State and county elections. The act expressly declares that it is intended to apply to "every election," and "to each and every voting place," and that the powers of the commissioners of election shall operate "to the exclusion of the sheriff," or other persons previously having the power now conferred on said commissioners. Not content with this strong negative language, the legislature, to prevent the possibility of misconception, adds the affirmative provision, expressing the same thought more clearly, and with more particularity of application: "The county courts, *mayors, boards of mayor and aldermen,* and *sheriffs* . . . are hereby divested of the authority to appoint judges or inspectors and clerks of elections and officer or officers."

The specific mention of "mayors" and "boards of mayor and aldermen" could have no other meaning than that municipal elections were intended to be included.

We do not think that chapter 436, Acts of 1907, can affect the question. The provisions of that act could not become operative until after the appointment of commissioners thereunder in the following May, while the election in question was advertised for April 16th preceding. *Davis* v. *Rogersville,* 107 Tenn., 588, 64 S. W., 893; *Lindsay* v. *Allen,* 112 Tenn., 648, 82 S. W., 171.

Chapter 450, Acts 1901, contains the new charter of Newbern. Section 6 is relied upon as conferring the power of conducting corporate elections upon the sheriff of Dyer county. That section does purport to confer such power on the sheriff, but only in a special and limited way; that is, for the purpose of electing a "mayor, aldermen, recorder, and marshal."

Chapter 558 of the Acts of 1907 gives a new boundary to the town of Newbern, by adding certain territory thereto. There is no evidence, however, that any additional voters lived therein, or that the lands so embraced were not owned by persons already resident within the previous corporate limits. It is not perceived, therefore, how this statute could affect the question.

However, the election was void, because held by the sheriff, and not under the authority of the commissioners of election.

It follows that the board of mayor and aldermen should not have issued the bonds, because not authorized to do so by a lawful vote of the people of the town of Newbern. By the express terms of the enabling act (section 3) the bonds were not to be issued unless or-

dered by a vote of a majority of the qualified voters of the town. The language of section 3 is: "The said bonds shall not be issued or used unless so ordered by a vote of a majority of the qualified voters of the town of Newbern." An election held by a person who has no authority to hold it cannot be treated as a lawful or proper method of ascertaining the will of the people. The conclusion stated is so obvious and so necessary that no authority is needed to support it; yet there are authorities fully in point. *State* v. *Taylor,* 108 N. C., 196, 12 S. E., 1005, 12 L. R. A., 202, 23 Am. St. Rep., 51; *Hughes* v. *Roberts,* 142 Ky., 142, 134 S. W., 168; *Supervisors of Schuyler County* v. *People,* 25 Ill., 181; *Supervisors of Marshall County* v. *Cook,* 38 Ill., 44, 87 Am. Dec., 282; *Railroad* v. *Town of Virden,* 104 Ill., 339. Therefore, if steps had been taken before the issuance of the bonds, there is no doubt the issue could have been enjoined, or payment could be successfully resisted as against any one purchasing with notice.

It is insisted, however, that in favor of *bona fide* holders of the bonds the town is bound, notwithstanding the invalidity of the election, and that plaintiffs are *bona fide* holders. We are of the opinion they were such, under the facts we have stated bearing on this subject, unless it shall appear that they were bound to examine the ordinance, which conveyed the knowledge that the election had been held by the sheriff.

The bond recites that it was issued "as ordered by a vote of a majority of all the qualified voters of the town of Newbern, at an election duly and legally held by

order of the board of mayor and aldermen of said town, on the sixteenth of April, 1907, *and under and in accordance with an ordinance duly passed* by the said board of mayor and aldermen at a meeting thereof duly and regularly called and held on the nineteenth day of April, A. D. 1907."

The ordinance last referred to recited that the election was held by the sheriff of Dyer county.

If the purchasers of bonds were bound to take notice of the ordinance referred to in the bonds, then they had notice that the election was void, and that the board of mayor and aldermen could not lawfully issue the bonds.

Were they bound to examine that ordinance, or could they rely solely upon the recitals of the bond?

After a very careful and elaborate examination of all of the decisions of the supreme court of the United States on the subject, Judge Dillon thus states the result, in section 926 of volume 2 of the latest edition of his great work on Municipal Corporations:

"The foregoing examination of the decisions of the supreme court of the United States discloses the basis upon which the doctrine of that court as to estoppel by recitals has proceeded. The requisites to a recital as shown by that doctrine are that there be *an authorized tribunal* with the power to decide, *a decision* by that tribunal, and *a recital* of that decision. The recital is itself a decision by the tribunal. The rule respecting the binding force of recitals in municipal bonds is that where legislative authority has been given to a municipality, or to its officers, to issue bonds for

Weil v. Newbern.

money borrowed, or in payment of a subscription to the stock of a railroad, but only on some precedent condition, such as a popular vote favoring the subscription, and where it may be gathered from the legislative enactment that the officers of the municipality were invested with power to decide whether the condition precedent has been complied with, a recital that it has been, made in the bonds issued by them, and held by a *bona fide* purchaser, is conclusive of the fact and binding upon the municipality; for the recital is itself a decision of the fact by the appointed tribunal.   But it is apparent that this rule does not absolutely preclude all questions as to the validity of municipal bonds and the efficacy of recitals therein. The adjudged cases, examined in the light of their special circumstances, show that the facts which a municipal corporation, issuing bonds for money borrowed or in aid of the construction of a railroad, is not permitted, against a *bona fide* holder, to question in the face of a recital in the bonds of their existence, are those connected with or growing out of the discharge of the ordinary or authorized duties of such of its officers as were invested with authority to execute them, and which the statute conferring the power made it their duty to ascertain and determine before the bonds were issued—not merely for themselves as the ground of their action in issuing the bonds, but equally as authentic and final evidence of their existence for the information and action of all others dealing with them in reference to it.   Hence, if the fact necessary to the existence of the authority is by the

constitution or by statute provision to be ascertained, not officially by the officers charged with the execution of the power, but by reference to some express and definite record of a public character, such as the assessment roll heretofore referred to, then the true meaning of the law in such case is that the authority to act at all depends upon the actual positive existence of the requisite fact as shown by such record, and not upon its ascertainment and determination by any one. The general rule is that, unless otherwise specially provided by law, an innocent holder of municipal bonds is not bound to take notice of matters appearing of public record contrary to the recitals in the bonds. Nor is a *bona fide* purchaser of municipal bonds affected by constructive notice of pending litigation or by constructive notice of adverse judgments. It has also been said that when the recitals are made, not by regular officers of the municipality, but by commissioners specially appointed to issue the bonds on its behalf, the municipality cannot be concluded by the recitals until it appears that the commissioners were duly appointed, and thus had authority to act. This distinction is not without significance; but if the commissioners exercised the powers conferred upon them by statute, and their authority to act was recognized by the municipal officers, and if back of that it be found that the records of the appointing power disclose an order making the appointment in due form and which recites a prior adjudication of all the facts, the point is reached beyond which the purchaser of the bonds is not obliged to go. Giving full

force to the distinction between the action of the general and special officers, there must be, even in respect to the latter, some point in the line of inquiry beyond which a party dealing in the bonds is not bound to go in his investigations as to their authority to represent the municipality, and that point is reached when an appointment in due form is found made by the appointing tribunal named by the statute.

"Although the principles of estoppel laid down by the supreme court of the United States have not been uniformly adhered to or followed by the courts of the States, decisions are to be found in many States showing the acquiescence and assent of the local judiciaries to the rule adopted by the federal courts."

As to whether a *bona fide* holder must examine the ordinances of the corporation, he thus states the result of the cases in section 935:

"Bonds issued by cities frequently recite that they are issued under and in pursuance of and in conformity with a statute and ordinances of the city, as well as other facts. The question has on several occasions arisen as to how far a *bona fide* holder of the bonds is chargeable with notice of the terms of the ordinance, and facts disclosed thereby, which would render the issue *ultra vires* and illegal. The result of the decisions would seem to be that when a city issues bonds containing recitals that they are issued under and in pursuance of and in conformity with its charter, or with a special statute, and the ordinances of the city, a *bona fide* holder of the bonds is *not chargeable with knowl-*

*edge or notice of the terms and contents of the ordi-
nances,* although the ordinances in question may be re-
cited in the bonds by title and date, and that the bonds,
in his hands, are not affected with any illegality which
would be disclosed by examination of the terms of the
ordinances. In other words, the recital of compliance
with the statute imports that the bond is in all respects
a valid obligation of the city, issued under the author-
ity contained in the statute, and a purchaser of the
bonds for value is absolved from any duty to examine
the ordinances for the purpose of ascertaining their
terms and seeing that the bonds are in fact issued for
authorized purposes."

On these questions this court has followed the deci-
sions of the supreme court of the United States: *State*
v. *Anderson County,* 8 Baxt., 249; *Shelby Co.* v. *Jarna-
gin,* 3 Shan., 179; *Carriger* v. *Mayor and Aldermen of
Morristown,* 1 Lea, 243; *Nelson* v. *Haywood County,* 87
*Tenn.,* 781, 11 S. W., 885, 4 L. R. A., 648; *Johnson City*
v. *Railroad,* 100 Tenn., 138, 44 S. W., 670.

It is perceived, however, that the turning point on
which the effect of recitals is based is that they are
treated as decisions made by the tribunal or officers au-
thorized by the enabling act to issue the bonds. When
the bonds are signed by such officers, the recitals are
considered and treated as the result of the deliberate
judgment of the persons designated by the enabling
statute to determine, before issuing the bonds, whether
all essential preliminaries have been complied with;
this determination being, not only for their own guid-

ance in deciding whether to issue or not, but also for the information of all the world when such bonds shall be offered for sale—such determination being justly held binding on the corporation, in favor of *bona fide* holders.

But it is obvious that when the bonds are signed, not by the persons or body authorized by the enabling statute to issue them, but by other persons referred to in the bonds as appointed for the purpose by the body having power to issue, one intending to purchase must examine the record of appointment, to obtain assurance that such persons have been appointed for the purpose. As held in *Rondot* v. *Rogers Township*, 99 Fed., 202, 212, 39 C. C. A., 462, 472, the body clothed by the enabling act with power to issue, need not sign the bonds in person, but may designate special agents for the purpose, and, if such appointment has been made, the recitals of these special agents are the recitals of the designated body, and hence of the corporation. But as previously stated, before this result can obtain, the fact of the appointment must be ascertained by reference to the ordinance making the appointment.

Under the enabling statute we have under consideration in the present case, the body selected by the legislature to issue the bonds was the board of mayor and aldermen. If that body had signed the bonds, a *bona fide* purchaser might have relied upon the recitals contained in them without going further; but when, on inspection of the bond and comparing it with the enabling act, he found that the board had not signed the bonds

as such, but that they were signed only by the mayor and clerk, under a representation contained in the bonds that these persons had been appointed by the board for the purpose, it became the duty of the intending purchaser to go one step further back, behind the bonds, and inquire whether such appointment had been made by having recourse to the ordinance making the appointment. This is a necessary exception to the rule stated in section 935 of Dillon on Municipal Corporations, supra, to the effect that the ordinances need not be examined to test the validity of recitals. If this were not so, it would be in the power of the mayor and the clerk in any instance to bankrupt the municipality by issuing unauthorized bonds, placing them in the hands of *bona fide* holders, and pocketing the proceeds. The rule in favor of the binding effect of recitals is stringent enough to protect *bona fide* holders, and at the same time to place municipal corporations in great peril from the acts of officers whom they have chosen, and as to whose powers they have full notice by the terms of the enabling act. They should not be placed in greater peril by a rule binding them to the recitals made by persons and designated for the duty by such enabling act. Moreover, from the standpoint of the purchaser himself, it is not unreasonable that he should inspect the records of the corporation for the purpose of ascertaining whether the persons signing the bonds were empowered to do so by the board which has given the power to issue by the enabling act. This view is in substance expressed in the concluding part of section 926, supra.

The same rule was announced by this court in *Barnard* v. *Hawkins Co.,* 2 Shan. Cas., 97. In that case it appeared that the enabling act conferred upon the county court of Hawkins county the power "to authorize the issuance of county bonds, payable at such time" as might be directed by it, to pay the subscription mentioned in the statute. The bonds sued on were made out in due form, and signed by the chairman of the county court, and countersigned by the county clerk. It did not appear, however, that any subscription had ever been made in behalf of the county for stock in the company referred to. The county court made no order authorizing the subscription, or authorizing the issuance of the bonds; in fact, took no action on the matter, so far as appeared of record on the minute books of the court. Speaking to this matter the court said:

"We think there is no principle or sound authority upon which these bonds can be held valid obligations of the county. The people of a county can only act through their officers and agents, but these officers and agents can only bind the county when they act within the sphere defined and established by law. The county was authorized to subscribe the stock, and the county court could authorize the issuance of the bonds. Yet the county has not subscribed the stock in any mode, no subscription is shown to have been made by any one in behalf of the county, nor has the county court, in any manner, authorized the issuance of these bonds. Certainly the chairman or clerk has not the power of their own volition to bind the county by these bonds.

"But it is argued that the county is now estopped from denying the bonds, by reason of the fact that for several years the tax collector received similar coupons for taxes, and that the chairman of the county court gave him credit therefor in his settlements. If the chairman of the county court had not the power to bind the county in the first instance, by the execution of the bonds, we think he could not estop the county by the acts referred to.

"We are aware that the recent decisions of the supreme court of the United States have assumed very strong grounds in favor of enforcing obligations of this character, but we think they have not gone to the extent now claimed; at any rate, we cannot go to this extent. In case of mere irregularities in the exercise of the power, as in the case of *State* v. *Anderson County,* we agree that the obligations ought not to be avoided; but here we hold that the county of Hawkins has not acted through the agencies recognized by law as possessing the power to bind the people of the county."

We are not aware of any general rule which makes it the duty of the mayor to sign the bonds of a municipality. In section 387 of Dillon on Municipal Corporations, it is said that the office of mayor is one of great antiquity, and that both in this country and in England he is the head executive officer of the corporation; "but," the author continues, "with us it is important to bear in mind that all his powers and duties depend entirely upon the provisions of the charter or constituent act of the corporation, and valid by-laws passed in pursuance

thereof, and these vary, of course, in different munici-
palities."

We are not aware of anything in the charter of
Newbern that vests the power to issue negotiable bonds
in its mayor and clerk, or to sign such bonds. The pro-
visions of the charter, so far as they bear upon the ques-
tion at all, are as follows:

The charter (Acts of 1901, ch. 450) provides for the
election of a recorder. Section 11, after specifying
various duties of the recorder, further provides that
"the recorder shall perform such other duties as the
board may impose upon him." Section 13 provides that
the board shall have power to make all proper contracts
necessary for corporate purposes, which shall be made
in the name of the corporation, "and signed by the
mayor and recorder." Section 14 provides that the
mayor and recorder shall sign deeds conveying the cor-
porate property. By chapter 220, section 2, Acts of
1903, the duties of the recorder were devolved upon the
mayor, and it was provided that at the next election
no recorder should be chosen. The section continues:
"But thereafter the mayor shall perform all the duties
of the said office, except the mayor and aldermen, as
now constituted and qualified, shall elect and qualify
a city clerk of their number, who shall keep the min-
utes of the board meetings, countersign warrants drawn
on the treasury as the recorder has heretofore done,
hold the mayor's court in his absence, sickness or dis-
ability, and in such cases shall have all his power and
authority, and shall take the place of the recorder in

receiving or making title to property for the mayor and
aldermen, as provided under section 113 of the chater.
By the act of 1903, referred to, the duties of the mayor
are prescribed, and it is added: "The performance of
such other duties as the board may impose upon him."
Further, as to the clerk: Section 3, ch. 558, Acts of
1907, reads: "That that part of the acts of the general
assembly of 1903 abolishing the office of recorder be,
and the same is hereby repealed, and the office rein-
vested with all of the privileges and duties as recited
in acts of the general assembly of the State of Tennes-
see of 1901, ch. 450," etc. This act was approved April
15, 1907. By section 5 it was provided as follows:
"That this act take effect from and after its passage,
the public welfare requiring it, except the office of re-
corder, which shall take effect Dec. 14, 1907." This left
the office of clerk in existence until December 14, 1907,
and therefore when the bonds were issued, September
1, 1907. However, the powers of the clerk were particu-
larly set out in section 2 of the act of 1903 above men-
tioned, and these did not include the power to sign con-
tracts for the board of any nature whatsoever. The
power which the recorder had in this respect, along with
the mayor, was after the abolition of the office of recor-
der vested only in the mayor. This was that "the board
shall have power to make all proper contracts neces-
sary for corporate purposes, which shall be made in the
name of the corporation," and signed by the mayor,
after the act of 1903. This, however, had reference to
the making of ordinary contracts necessary in the usual

course of the corporate life.  It had no bearing upon the issuance of negotiable bonds, and conferred no authority for that purpose upon the mayor, or even upon the board of mayor and aldermen.  That is a power that must be specially conferred by the legislature.  We have no case in this State deciding this precise point, but such is the trend of our modern decisions.  *Richardson* v. *Marshall County,* 100 Tenn., 348, 349, 45 S. W., 440; *Colburn* v. *Railroad Co.,* 94 Tenn., 43, 28 S. W., 298; *Pulaski* v. *Gilmore,* 3 Shan., 115.  We have an earlier case (*Adams* v. *Memphis,* 2 Cold., 645) which in its reasoning strongly tends to the opposite view. The exact point decided in that case, however, was that a municipal corporation, after having mortgaged certain land owned by it, to secure the bonds of a tributary railway company, issued on the faith of the security tendered to purchasers of the bonds by the mortgage, by the terms of which the rents of the mortgaged property were to be annually applied to the payment of interest on the bonds, and at maturity the land itself to be sold for payment of the principal, and after having paid interest for several years, could not repudiate the transaction and resist the enforcement of the mortgage.  So far as concerns the lending of the credit of a city to a railway company, the decision is now superseded by article 2, section 29, of the constitution of 1870, which provides that the credit of no county, city or town shall be given or loaned to or in aid of any person, company, association, or corporation, except

upon an election to be first held by the qualified voters of such county, city, or town and the assent of three-fourths of the vote cast at such election. We dissent from the reasoning of the opinion in *Adams* v. *Memphis* as to the implied power of municipal corporations to issue negotiable bonds.

As we have stated, the reasoning of that case is opposed to the trend of all of our modern cases, as well as to those of the supreme court of the United States, and to that of many of the States of our Union. *Tensas Par. Police Jury* v. *Britton,* 15 Wall., 566, 21 L. Ed., 251; *Claiborne Co.* v. *Brooks,* 111 U. S., 400, 4 Sup. Ct., 489, 28 L. Ed., 470; *Concord* v. *Robinson,* 121 U. S., 165, 7 Sup. Ct., 937; 30 L. Ed., 885; *Kelley* v. *Milan,* 127 U. S., 139, 8 Sup. Ct., 1101, 32 L. Ed., 77; *Norton* v. *Dyersburg,* 127 U. S., 160, 8 Sup. Ct., 1111, 32 L. Ed., 85; *Hill* v. *Memphis,* 134 U. S., 198, 10 Sup. Ct., 562, 33 L. Ed., 887; *Merrill* v. *Monticello,* 138 U. S., 673, 11 Sup. Ct., 441, 34 L. Ed., 1069; *Brenham* v. *German Am. Bank,* 144 U. S., 173, 12 Sup. Ct., 559, 36 L. Ed., 390; *Folsom* v. *School Directors,* 91 Ill., 402; *Lippincott* v. *Pana,* 92 Ill., 24; *Cojuard* v. *Oquawka,* 192 Ill., 355, 61 N. E., 660; *Swanson* v. *Ottumwa,* 131 Iowa, 540, 106 N. W., 9, 5 L. R. A. (N. S.), 860, 9 Ann. Cas., 1117; *Cleveland School Furn. Co.* v. *Greenville,* 146 Ala., 559, 41 South., 862; *State* v. *Mayor of Lafayette,* 49 La. Ann., 1748, 22 South., 756, 1008; *Parsons* v. *Monmouth,* 70 Me., 262; *Knapp* v. *Hoboken,* 39 N. J. Law, 394; *Waxahachie* v. *Brown,* 67 Tex., 519, 4 S. W., 207; *Austin* v. *Nalle,* 85 Tex., 520, 540, 22 S. W., 668, 960. In *Colburn*

v. *Railroad Co.,* supra, a statement of doctrine, incidentally, in *State* v. *Anderson County,* supra, in harmony with that of *Adams* v. *Memphis,* was dissented from, and the rule laid down in substance as we now state it. Although the inhibition of article 2, section 29, of the constitution of 1870 applies only to the lending of credit, the constant practice since the promulgation of that constitution has been to provide specially by legislative act for the issuance of negotiable bonds by the counties, cities, and towns of the State wherein it is desired by them to raise money in that form.

Returning, now, to Acts 1907, ch. 117, to·which the power to issue the bonds in question here must be referred, we are of the opinion, as already stated, that the board of mayor and aldermen might appoint by proper ordinance the mayor and clerk, or any other officers or agents, to execute the bonds in the name of the board; but in such case it would be incumbent upon an intending purchaser to examine the ordinance constituting such persons agents, for the reasons previously given herein. Upon the examination of such ordinance, he would be fixed with knowledge of all of its contents. Nor could he escape by failure to examine what it was his duty to examine. In either event he would be charged with knowledge of the contents of the ordinance.

The ordinance containing the appointment was that of April 19, 1907, and it was specially referred to in the bond. That ordinance recited that the election was held by the sheriff of the county, and hence gave plenary

information that it was a void election, and that the board of mayor and aldermen of Newbern had no power to issue the bonds. There could, therefore, be no innocent purchaser or holder of such bonds.

It is insisted that there was a ratification of the series of school bonds, of which bond No. 4 is one, because the town of Newbern has continued to pay interest on the other series of $25,000 of bonds issued for improving and extending the water and light system of the town, and for the paving and graveling of its streets. We do not think any ratification could be based upon this fact, when it appears that the town received full consideration for the last series of $25,000 of bonds. The fact that it did receive full consideration for these bonds was sufficient reason for its paying interest thereon, not only as a matter of common honesty, but also because, if it did not recognize these bonds and pay interest on them, or if it in any way repudiated them, the town would be liable to immediate suit by the bondholders for the money received by it as for money had and received to their use; the town having received and appropriated the benefit of these bonds. *Land Co.* v. *Jellico,* 103 Tenn., 320, 52 S. W., 995; *Watterson* v. *Nashville,* 106 Tenn., 410, 61 S. W., 782; 2 Dillon on Municipal Corporations (5th Ed.), section 961. It is unnecessary to consider the other questions made in the case.

On the grounds stated, we are of the opinion that the judgment of the trial judge must be affirmed.