Willis PARTEE et al., Appellants,

v.

Billy M. PIERCE et al., Appellees.

Court of Appeals of Tennessee,
Western Section.

Jan. 10, 1977. ·

Certiorari Denied by Supreme Court
May 31, 1977.

John C. Nowell, Jr., Tom W. Crider, Trenton, Hewitt Tomlin, Jackson, for appellants.

Sidney W. Spragins, Jackson, Thomas E. Harwood, Trenton, for appellees.

W. E. QUICK, Special Judge.

This appeal involves the constitutionality of Chapter 95 of the Private Acts of 1975, authorizing the Bradford Special School District, in Gibson County, created by Chapter 153 of the Private Acts of 1917, to issue bonds in an aggregate amount not to exceed one million six hundred thousand dollars ($1,600,000) for the purpose of constructing, improving and equipping school buildings and additions thereto, and to levy a tax of one dollar and seventy-five cents ($1.75) on each one hundred dollars worth of taxable property in the Bradford Special School District for the payment of such bonded indebtedness.

Section 4 of the Act provides that the bonds therein authorized shall not be issued until the issuance thereof has been approved by a majority of the qualified voters in the District voting in a referendum to be called for such purpose by the Election Commissioners of Gibson County.

Section 5 of the Act further provides that the Act shall have no effect unless the issuance of the bonds therein authorized shall have been approved by a single majority of the qualified voters in the Bradford School District voting in such referendum election.

The Act further provided for an appropriate notice of the election to be published in a newspaper of general circulation in the District at least twenty (20) days prior to the date of referendum.

Pursuant to this authority a referendum was held on July 12, 1975, and the bond issue was approved by a majority of those voting in the referendum election.

Thereafter, on December 30, 1975, suit was filed in the Law and Equity Division of the Court of Gibson County, by certain of the taxpayers within the Bradford Special School District, seeking to have the Court declare Chapter 95 of the Private Acts of 1975 unconstitutional and void, and to enjoin the sale of the bonds therein authorized.

The matter was heard on the pleadings and stipulation and exhibits, with the result that the Chancellor found that Chapter 95 was not unconstitutional as an improper delegation of the legislative power to the people; that adequate notice had been given for the referendum election, and the suit was accordingly dismissed.

Appellants assign two Assignments of Error, as follows:

I

It was error for the Trial Court to find and declare that Chapter 95 of the Private Acts of 1975 is not unconstitutional as an improper delegation of the legislative power to the people.

II

It was error for the Trial Court to find and declare that adequate notice was given for the Bradford Special School District bond referendum held on July 12, 1975.

By the first assignment, it is appellants' contention that by making issuance of the bonds conditioned upon obtaining a majority vote in the District, under the provisions of Section 4 of the Act, the Act is rendered unconstitutional as an improper delegation of power to the people, in violation of the provisions of Article II, Section 3, and Article XI, Section 3, of the Constitution of the State of Tennessee.

In support of this position, appellants cite as authority *Wright v. Cunningham,* 115 Tenn. 445, 91 S.W. 293; *Arthur v. State,* 148 Tenn. 434, 256 S.W. 437, and *Buena Vista Special School District v. Board of Election Commissioners,* 173 Tenn. 198, 116 S.W.2d 1008.

It is believed these cases may be distinguished. In *Wright v. Cunningham* there

was involved an amendment of a legislative act of general application, making it unlawful to permit livestock to run at large in counties in Tennessee having a population of between 14,000 and 200,000. The amendment sought to limit application of the general act by providing that it would apply only to such counties as might adopt the same by a majority vote of legal voters in such county. The Court held the amendment to be unconstitutional as delegating legislative power to the people. This would appear to be quite a different situation than involved in the case at bar, dealing with a private act applicable to a purely local situation. Moreover, the holding in *Wright v. Cunningham,* supra, has been considerably modified in later decisions, as will be pointed out in this opinion.

In *Arthur v. State,* supra, the Court had for consideration a private act which undertook to create a new circuit court of Washington County, subject to vote of the citizens of the County. The particular section of the act read as follows:

"If a majority of the lawful voters voting at said election vote 'for the circuit court' then this act shall take effect; but if a majority of the lawful voters at said election vote 'against the circuit court,' then this act shall not take effect and shall not become a law."

It is not conceivable that the Legislature could delegate to the citizens of a particular county the power to create a State court, and the act was clearly unconstitutional.

In *Buena Vista Special School District v. Board of Education Commissioners,* supra, the Legislature, by private act, delegated to the citizens of the School District the right, by popular vote, to amend a previous act of the Legislature by replacing the old board of directors, and to provide for management of the district by the County Board of Education. The Court properly held this to be an improper delegation of legislative authority. It would appear there is a vast difference in undertaking an amendment of a previous act by popular vote and implementing a current act, and it is not believed this case is in point in dealing with the situation here under consideration. In any event, there is an abundance of later authority upholding the validity of legislation of the character here involved.

In *Weil v. Newbern,* 126 Tenn. 223, 148 S.W. 680, there was involved an act of the legislature authorizing the issuance of bonds for the erection and furnishing of school buildings. Section 3 of the Act provided:

"Be it further enacted, that the said bonds shall not be issued or used unless so ordered by a vote of a majority of the qualified voters of the town of Newbern at any time and as many times as the mayor and aldermen may deem necessary."

The attack made upon Section 3 of the Act was limited to that part of the section giving to the mayor and aldermen the right to hold elections at any time and as many times as the mayor and aldermen may deem necessary.

While the election was held to be void for the reason it was held by the sheriff instead of the Commissioners of Election of Dyer County, the Court did hold the attack made on Section 3 of the Act to be unfounded.

In *Kee v. Parks,* 153 Tenn. 306, 283 S.W. 751, the Buena Vista Special School District of Carroll County was authorized to issue bonds in the sum of $12,000, the proceeds to be used in the purchase of a lot and the construction of a school building thereon. The Private Act provided an annual tax of forty cents on the one hundred dollars worth of taxable property within the district for payment of the bonds with interest. The act further provided that the bonds should not be issued until authorized by a majority of the voters in an election called for that purpose.

The Court, after considering and distinguishing *Wright v. Cunningham,* supra, and *Weil v. Newbern,* supra, held:

"It follows that, whether the submission feature of the act be treated as only an incident to the issuance of the bonds, or as a condition or contingency upon which their issuance is to take place, or as

an immemorial usage, or as a delegation of power under article II, section 9, or the act be treated as special rather than general, the constitutional provisions here considered do not render it invalid."

In *Clark et al. v. State,* 172 Tenn. 429, 113 S.W.2d 374, the Court had for consideration application of the local option law for the manufacture and sale of intoxicating liquors. The Public Act provided that upon the filing of a petition by ten percent or more of the qualified voters of a county, it became the duty of the county election commissioners to hold an election permitting residents of the county to vote for or against the manufacture of intoxicating liquors within the county. A petition was filed in the Chancery Court to enjoin the county officers from calling such an election.

The Chancellor, holding the Act to be unconstitutional, sustained the petition and granted the injunction.

On appeal, petitioners, relying upon *Wright v. Cunningham* and *Arthur v. State,* insisted that the act was unconstitutional as an improper delegation of legislative power to the people. The Supreme Court, in reversing the judgment of the Chancery Court, held:

"After a careful consideration of the questions involved in this cause, we hold Chapter 193, Public Acts of 1937, to be valid and constitutional. The decree of the chancellor holding the act unconstitutional must be reversed and the bill dismissed."

In *Melvin v. Bradford School District,* 186 Tenn. 694, 212 S.W.2d 668, complainant sought a declaratory judgment as to the validity of Chapter 707, Private Acts of 1947, which, among other things, authorized the issuance of bonds in an amount not to exceed Fifty Thousand Dollars ($50,000) for the purpose of erecting' and equipping school buildings. And, as in the case at bar, the Act provided that the power to issue the bonds should not be exercised until a majority of the qualified voters, resident in the District, have voted in favor of the issue and sale of the bonds.

While that portion of the Act providing for a majority vote of the people was not specifically attacked, the validity of the entire Act was nevertheless within the purview of the pleadings, seeking a declaratory judgment to declare the Act invalid. We believe, therefore, that the holding of the Court is significant in our consideration of this case. We quote from the opinion:

"The last assignment of error challenges the correctness of the Chancellor's decree in holding Chapter 707, Private Acts of 1947, as valid. This Act purports to amend the original Act of 1917 by authorizing the issuance of $50,000.00 in bonds for special school purposes. *We find nothing in this Act that is violative of the Constitution. Counsel for appellant fails to suggest any reason for holding the Act unconstitutional and upon full consideration we can conceive of none.* We are, therefore, constrained to agree with the Chancellor that it is a valid Act." (italics ours)

From this review of authorities, it clearly appears that our Supreme Court, in the more recent decisions, has consistently held that Private Acts, of local application, giving to the people a right of adoption or rejection of rights or responsibilities therein provided is not an improper or unconstitutional delegation of legislative power.

■ We believe, therefore, that the constitutionality of Chapter 95 of the Private Acts of 1975 is clearly established by the line of authorities herein discussed, but, by way of answer to appellants' attack directed particularly to Section 5 of the Act, providing that the Act shall have no effect unless the proposition to issue the bonds shall have been approved by a simple majority of the qualified voters residing in the District, we would urge that this section neither adds to nor detracts from the body or meaning of the Act.

■ By Section 4 of the Act it is provided that the bonds shall not be issued until approved by a majority of the qualified voters in the special school district. It follows then, as a matter of course, that if the

bond issue is not approved by the voters, the Act is of no effect. The Act merely authorizes the bond issue—it does not require it. Section 5 could, therefore, be elided from the body of the Act without in any way impairing the intent or purpose, or even the effectiveness of the Act.

The doctrine of elision is recognized in *Davidson County et al. v. Elrod,* 191 Tenn. 109, 232 S.W.2d 1, wherein the Court had for consideration Chapter 806 of the Private Acts of 1949. The Act provided certain benefits for widows of pensioned employees of Davidson County. The body of the Act, after providing for the widow, provided certain such benefits if there be no widow, to dependent children under sixteen years of age, or a dependent mother, if there be no such children.

The widow, Mrs. Elrod filed suit to recover benefits under the Act, and was met by demurrer insisting that the Act was unconstitutional, in violation of Article II, Section 17, in that the body of the act was broader than the caption, since it included dependent minor children or mother of beneficiaries.

The Circuit Judge overruled the demurrer, holding that the provision in the body of the Act, applying to children or mother could be elided without destroying the integrity of the Act insofar as it applied to the widow. On appeal, the Supreme Court held:

> "The rule of elision applies where the valid portion of the statute is not so dependent upon the portion said to be void that the Court cannot presume that the Legislature would not have enacted the valid portion in the absence of the inclusion within the enactment of that portion which is said to be void."

Section 6 of Chapter 95 specifically provides for severance, and under authority of *Davidson County v. Elrod,* supra, we hold that the principle is applicable here.

Finally, by Assignment of Error II, appellants raise the question of adequacy of notice as respects the call for the referendum election held on July 12, 1975.

The Act here under consideration provides that notice shall be given at least twenty days prior to the date of election by publication in a newspaper circulated in the school district.

It is conceded that there are no newspapers published within the boundaries of the Bradford Special School District. The closest towns in Gibson County publishing newspapers are Trenton, Milan and Dyer. The record discloses that newspapers published in these several surrounding towns have regular circulation within the Bradford Special School District, and there is attached, as exhibits to the transcript, seventeen newspaper clippings covering stories with respect to the referendum, beginning on May 21, 1975, and ending July 10, 1975. It is further noted that among the clippings are four from the Jackson Sun, published in Jackson, Tennessee.

It is further noted, in article appearing in the Jackson Sun issue of June 8, 1975, that reference is made to a printed letter explaining why people should vote against the bond issue, and it states the letter would be circulated to everyone in the district by persons opposed to the bond issue. Furthermore, that a door to door canvass of the district would be begun on that date (June 8, 1975) to "warn people not to vote in favor of this bond issue."

It is conceded that the twenty-day official notice, as required by the Act, was delayed by some four or five days, but it is noted the press releases began as early as May 21, 1975, with a story appearing on that date in the Milan Mirror, and continued until the election on July 12, 1975.

It would appear, therefore, that with the wide circulation of news, together with the letter herein referred to and the door to door canvass of voters, the short delay in publishing the official notice is relatively unimportant. Our Courts have held that statutory notice is not necessarily a condition precedent to a valid election. In *Hanover v. Boyd,* 173 Tenn. 426, 438, 121 S.W.2d 120, 124, wherein the Governor failed to issue a writ of election within the prescribed time to fill a vacancy upon the

death of an attorney general, the Court held:

"The official returns show that the vote cast in this election for District Attorney General on August 4, 1938, was higher than the vote cast for candidates for any other office on the same day except for candidates running for sheriff. As it heretofore appears, more than forty-four thousand votes were cast in this special election and there can be no question but that the people had adequate notice of the election and that there was a full expression therein by the people.

"For the reasons stated, under the authorities set out, we are unwilling to set aside this election because of the failure of the Governor to issue a writ of election and to cause one month's publication thereof to be made. The time and place of the election were fixed by a higher authority. The vacancy was a matter of public knowledge. The election machinery was set up. It can make little difference who started the machinery so long as it functioned properly on a proper occasion. We must regard the inaction of the Governor in this particular case as merely an immaterial official oversight."

In *State of Tennessee v. Quarterly County Court et al.,* 209 Tenn. 153, 351 S.W.2d 390, where there was a delayed statutory notice of special election referendum on a school bond issue, the Court stated:

"We have held that this statute is directory only."

To the same effect is holding in *State v. City of Jackson,* 218 Tenn. 322, 326, 403 S.W.2d 304.

Finally, appellant contends that the notice prepared and published by the Election Commissioners of Gibson County did not conform to the requirements of Chapter 95 of the Private Acts of 1975, nor did it comply with the provisions of T.C.A. Sec. 2–1216(b).

█ Chapter 95 simply required publication of an "appropriate notice" of the holding of the election. It further required that the ballot should "state briefly the maximum amount of bonds authorized and the purpose of which such bonds are to be issued and shall contain the words 'for the issuance of bonds' and 'against the issuance of bonds'."

An examination of the official notice of election, appearing as Exhibit 7 to the Transcript, and the official ballot, appearing as Exhibit 8, indicates clearly a substantial, if not literal, compliance with the provisions of Chapter 95, as well as T.C.A. sec. 2–1216(b).

Appellant contends further that the notice of election must include "in its entirety" the resolution requiring the election. This contention is answered in *Pidgeon-Thomas Iron Company v. Shelby County,* 217 Tenn. 288, 397 S.W.2d 375, which involved a referendum for the approval of a local option sales tax. The same contention was made there, as here, that the complete resolution calling for the election was not "copied in toto" upon the ballot.

The Court, in approving the abbreviated legend, held:

"When citizens vote in a referendum, they are presumed to know the issue on which they are voting, and in the instant case we find that the abbreviated or short form of the pertinent part of the Resolution complies with the statute and that * * * the voter by reading such notice could intelligently vote his or her preference by making cross marks opposite the proper words."

And quoting further, the Court made the following pertinent observation:

"And after all, this is the people's government. Their wishes, constitutionally expressed, must prevail, no matter how much it upsets the previous status quo."

█ In conclusion, it is stipulated that there were at the time 2,445 registered voters within the School District; that there were 916 votes favoring the bond issue, and 476 votes against, or a total vote of 1,392. This indicates that approximately fifty-eight percent of the registered voters in the Bradford Special School District voted in this special election.

This, it seems, should indicate that the qualified voters in the Special School District were well aware of the issues involved, and that the will of the people has been expressed by a most representative vote.

As stated in *Heiskell v. Lowe,* 126 Tenn. 475, at page 497, 153 S.W. 284, at page 289, and again repeated in *Hanover v. Boyd,* supra:

"It is a serious thing for any court to interfere with the result of an election, and set aside what appears to be the expression of the popular will. No court will do so on slight ground".

We accordingly affirm the decree of the learned Chancellor holding that Chapter 95 of the Private Acts of 1975 is not unconstitutional as an improper delegation of the legislative power to the people, and that adequate notice was given for the Bradford Special School District referendum, and the cause is hereby dismissed at appellants' cost.

Honorable W. E. QUICK, by designation of the Supreme Court of Tennessee, took part in the hearing of this appeal in the absence of Presiding Judge C. S. CARNEY.

MATHERNE, J., concurs.

NEARN, J., dissents.

NEARN, Judge, dissenting.

I must respectfully dissent from the Opinion of my colleagues.

Section 4 of the Act is as follows:

"The bonds herein authorized shall not be issued until the issuance thereof has been approved by a majority of the qualified voters, who are residents and/or land owners of the district, in the special school district voting in a referendum called for such purpose by the Election Commissioners of Gibson County. The referendum shall be held at a time agreed upon between the Election Commission and the school board. Such referendum shall be held in the same manner and by the same officials as general elections are required to be held in Gibson County and notice thereof shall be given at least twenty (20) days prior to the date of said election by publication of an appropriate notice not less than one time in a newspaper of general circulation in such special school district. At such referendum election, the ballot shall state briefly the maximum amount of bonds authorized and the purpose of which such bonds are to be issued and shall contain the words 'for the issuance of bonds' and 'against the issuance of bonds'. Opposite each of said phrases shall be a hollow square and the elector shall indicate his vote 'for the issuance of bonds' or 'against the issuance of bonds' by inserting a mark in the square opposite the appropriate phrase. The Election Commissioners of Gibson County shall canvass the returns of such referendum election and determine and declare in writing the results thereof. Such declaration shall constitute conclusive evidence of the results of the referendum election."

Section 5 of the Act is as follows:

"This Act shall have no effect unless the proposition to issue the bonds herein authorized shall have been approved by a simple majority of the qualified voters residing in the area and/or landowners embraced within the Bradford Special School District voting in such referendum election. But upon such approval of the proposition, this Act shall be deemed to have been approved by such voters and shall be in full force and effect. The Election Commissioners of Gibson County shall certify the approval or nonapproval of this Act to the Secretary of State and to the Board of Education of the Bradford Special School District. The qualification of voters shall be that as provided by the General Election Laws of the state."

Section 7 of the Act is as follows:

"Except as otherwise provided herein, this Act shall take effect upon becoming a law, the public welfare requiring it."

First, with due deference, I do not agree with the majority's statement regarding the contention of the appellants. I do not understand the appellants' contention to be

that Section 4 of the Act is unconstitutional because it makes the *issuance of the bonds* conditional upon a majority vote in the district. I believe the appellants would agree that making the *issuance of the bonds* conditional upon obtaining a majority vote would in no way affect the validity of Section 4 or any other Section of the Act. As I understand the complaint, Section 4 is attacked only because of alleged non-compliance with its notice provisions.

Section 5 is the one attacked as an improper delegation of power and I fear properly so. It is not the vote on the *issuance of the bonds* that creates the constitutional infirmity; but it is that part of Section 5 which clearly, to me at least, creates an unconstitutional delegation of legislative power to the general public. That constitutionally offensive delegation is found in the words, "*This Act shall have no effect* unless" and . . . "upon such approval of the proposition, *this Act shall be deemed to have been approved by such voters and shall be in full force and effect.*" These are the words whereby the Legislature unconstitutionally delegated its authority.

The declaration of the effective date of an Act is a non-delegable legislative function. Section 7 of the instant Act, when read with Section 5, is a delegation of that function to the people of Gibson County.

It is my position that in *Wright v. Cunningham* (1905) 115 Tenn. 445, 91 S.W. 293, the Supreme Court held that just such attempted delegations as set out in the Act under scrutiny are unconstitutional. I do not believe that the holding in *Wright v. Cunningham* has been watered down by any subsequent decision of the Supreme Court dealing with the issue here presented.

In *Wright v. Cunningham,* supra, the Act called the "small stock Act" in essence provided:

This act shall only apply to such counties as may adopt the same by a majority vote by tickets which shall provide for those favoring the small stock law; "for the small stock law" and for those opposing the small stock law; "against the small stock law".

The Court held such Act to be an unlawful delegation of power because it "leaves to the people the power to say whether, when such a rule has been enacted, it shall ever become operative."

The Court further held:

"We are of the opinion that, under our constitution, no legislative act can be so framed as that it must derive its efficacy from a popular vote. To be valid it must leave the hands of the legislature complete; not in the sense that it must go into effect at once, it is true, but it must at its birth bear the impress of sovereignty, and speak the sovereign will."

In closing the *Wright* Court noted:

"It is said in some of the cases that the vote is the effect of the law, and not the law the effect of the vote; but we think this is a mere play on words, since it is clear that, if all laws were made dependent upon such a contingency, representative constitutional government would be destroyed."

Following the 1905 Opinion in *Wright v. Cunningham,* supra, we have the 1912 Opinion in *Weil v. Newbern,* 126 Tenn. 223, 148 S.W. 680. It is my opinion that the *Weil* Opinion deals with the problem of whether the *issuance of local bonds,* not the efficacy of the Act, may be left to a popular vote. The Court held that portion of the Act which permitted a vote on whether bonds would or would not issue was not a delegation of legislative authority. This in no way weakened the *Wright v. Cunningham,* supra, Opinion as the problem in *Wright* was whether the efficacy of the *Act* could be delegated to the people.

The Act in *Weil,* supra, provided as follows:

" 'An act to amend the charter of the town of Newbern and all the acts heretofore passed amendatory thereof, so as to empower the mayor and aldermen of said town to issue coupon bonds in an amount not to exceed fifty thousand dollars in excess of the present bonded indebtedness of the town.

'Section 1. Be it enacted by the general assembly of the State of Tennessee, that the charter of the town of Newbern and all acts amendatory thereof be, and the same are hereby, so amended that the mayor and aldermen of said town shall be vested with power and authority to issue fifty thousand dollars of coupon bonds of said town as follows: To issue twenty-five thousand dollars of said bonds for the purpose of erecting and furnishing school buildings for the benefit of the children of school age in said town, ten thousand dollars of coupon bonds to improve and extend the water and light system of said town, and fifteen thousand dollars for paving or graveling the streets of said town.

'Sec. 2. Be it further enacted, that all bonds issued under this act shall be of such denomination, bear such rate of interest, not exceeding six per cent per annum, and be due in such time not less than twenty—nor more than thirty—years from date, and be payable at such times and places as the mayor and alderman may determine.

'Sec. 3. Be it further enacted, that the said bonds shall not be issued or used unless so ordered by a vote of a majority of the qualified voters of the town of Newbern at any time and as many times as the mayor and aldermen may deem necessary.

'Sec. 4. Be it further enacted, that this act take effect from and after it (sic) passage, the public welfare requiring it.

'Passed March 13, 1907.' "

If the Act *sub judice* provided as did the *Weil v. Newbern* Act, supra, I would agree that the present attack is unfounded. But, unfortunately, the present Act does not. Section 3 of the Act in *Weil v. Newbern,* supra, provides "said *bonds* shall not be issued or used unless so ordered by a vote of a majority . . . ." This is not the same as saying the *Act* shall not have effect until the bond issue is approved. Section 4 of the *Weil v. Newbern* Act, supra, provided *"that this act take effect from and after it (sic) passage . . . ."* It did not leave it up to a popular vote as to the time when the Act of the Legislature shall become effective.

Next, in 1923 we have *Arthur v. State,* 148 Tenn. 434, 256 S.W. 437. The Act therein held unconstitutional provided:

" 'If a majority of the lawful voters voting at said election vote "for the circuit court" then this act shall take effect; but if a majority of the lawful voters at said election vote "against the circuit court," then this act shall not take effect and shall not become a law.' "

This is exactly, as far as I can perceive, what the present Act provides. The words "and shall not become a law" are surplusage because if the law never takes effect, it shall never become a law. In addition, the Legislature may not leave it to popular vote to determine what the Legislature must determine, that is, when the Act shall take effect. The Constitution, Article 2, Section 20 gives to the Legislature the prerogative of setting the effective date of an Act and it may not be done by referendum.

Then we have in 1926 *Kee v. Parks,* 153 Tenn. 306, 283 S.W. 751. The Act there under consideration provided that the *bonds* shall not issue until approved by vote. The holding in this case is the same as that in *Weil v. Newbern,* supra. The Act under consideration was not unconstitutional. It left to the people to decide whether the *bonds* would issue. It did not attempt to permit the people to vote on when an Act of the Legislature shall take effect.

The majority Opinion quotes a portion from the *Kee v. Parks,* supra, decision. However, it should be understood that the "submission feature" spoken of in the quote is that feature of the Act which submits to a popular vote the question of whether or not the *bonds* shall issue. It did not submit to a vote the efficacy of the *Act* itself.

Two cases appeared in 1938. The first is *Clark v. State* 172 Tenn. 429, 113 S.W.2d 374. The question there was: Could the Legislature authorize the people of a county to vote on whether a general law should apply to that County (possession of intoxicating beverages)? That is not the issue

now before us. But in the *Clark* case the Court discussed *Wright v. Cunningham,* supra, and held that the Act then under consideration did not run counter to the prohibitions announced in *Wright v. Cunningham.* The *Clark* Court first noted that the Act before it

"_ _ _ was a complete law when it passed through the several stages of legislative enactment and, by its terms, took effect from and after its passage. It required nothing further to give it validity."

The *Clark* Court then approved *Wright v. Cunningham,* supra, and noted that there the Act was unconstitutional because:

"The act did not provide any time when it should go into effect, other than the favorable vote for the law by the voters of Rhea county."

In *Clark v. State,* supra, the *Act* was not dependent upon a favorable vote before the Act went into effect. In the present case it is.

The second case to appear in 1938 was *Buena Vista Special School Dist. v. Board of Election Com'rs of Carroll County,* 173 Tenn. 198, 116 S.W.2d 1008. While not giving the exact verbiage of the Act under question, Justice Green speaking for the Court noted:

"[1] While the Act is framed somewhat differently from others previously invalidated by the court, it is obvious that the Act will derive any efficacy it may have from a favorable popular vote. An unfavorable vote leaves the Act nugatory. The case, therefore, falls within the authority of *Wright v. Cunningham,* 115 Tenn. 445, 91 S.W. 293, and *Arthur v. State,* 148 Tenn. 434, 256 S.W. 437, in which cases it was held that no legislative Act can be so framed as that it must derive its efficacy from a popular vote."

It is my opinion that this is the exact prohibited situation presented by the Act now under consideration by this Court.

*Melvin v. Bradford Special School Dist.* (1948) 186 Tenn. 694, 212 S.W.2d 668, simply held an Act which provided that bonds were not to be issued until the people voted on them was constitutional. I have no quarrel with it as it appears to me to be a reiteration of *Weil v. Newbern,* supra. However, it does not touch the problem as I see it, raised by this appeal.

My analysis of the pertinent cases leads me to believe that *Wright v. Cunningham,* supra, has not been softened by any later decision, but on the other hand, has been reaffirmed.

The majority would hold that even if my views on the subject were correct, the offensive words could be elided, and rely upon *Davidson County v. Elrod* (1950) 191 Tenn. 109, 232 S.W.2d 1, as an authority. With this position I do not agree. In my opinion the Act under consideration and the words sought to be elided in *Davidson County v. Elrod,* supra, are in no way similar or germane to the Act and words we must now consider. In *Arthur v. State,* supra, the same words now suggested by the majority to be the subject of elision were sought to be elided. The Court held it could not be done and stated:

"The legislature conditioned the life of the act before us upon the result of the election provided for. There can be no mistake about this. It would be a palpable contempt of the legislative will for us to strike out the election provision from the act and give effect to the act regardless of the election."

Therefore, I believe elision is impermissible.

It may well be that the school bond issue is needed in Gibson County. It very well may be that the Legislature, through oversight, has made a poor choice of words and it did not intend to let the effective date of the Act be determined by popular vote. However, as noted in *Wright v. Cunningham,* supra:

"All legislative acts, regardless of their contents or of their relative importance, must pass the same ordeal; not one, from a constitutional standpoint, being entitled to more consideration, or subjected to more stringent limitations, or to be treated with more leniency than any other.

**612**

All must be measured with the same measure."

For these reasons, I dissent and am constrained to declare the Act unconstitutional.