**Willis PARTEE et al., suing on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,**

v.

**Billy M. PIERCE et al., Trustee of the Bradford Special School District, Guy Morris, Trustee of Gibson County, Edwin E. Pigue, Chairman of the County Court of Gibson County and Gibson County, Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Sept. 11, 1979.

Certiorari Denied by Supreme Court Nov. 13, 1979.

R. A. Ashley, Jr., Ashley & Ashley, Dyersburg, for plaintiffs-appellants.

John C. Nowell, Jr., Tom W. Crider, Nowell and Crider, Trenton, for defendants-appellees.

MATHERNE, Judge.

The plaintiffs, landowners and taxpayers within the boundaries of the Bradford Special School District (District), sue on behalf of themselves and all others similarly situated in an effort to block a proposed bond issue by the District with resultant taxes against their land. The plaintiffs couch their complaint in terms which allege that the District has lost its legal identity because in the 1930's it turned over complete operation of its public school system to the Gibson County Board of Education and it has not been reactivated as a special school district in accordance with the requirements of T.C.A. § 49–233 and the duly adopted

regulations of the State Department of Education which implement that statute.

In dismissing the plaintiffs' lawsuit, the trial judge held that the District had not been deactivated, but it had continued to at least partially operate its public school system from its inception to the present. The plaintiffs appeal that decision.

In order to reactivate a special school district, it must be shown that the district would have a scholastic population within its boundaries that would assure an enrollment of at least 1,500 pupils in its public schools, or the district must have at least 2,000 pupils presently enrolled in the proposed school system. T.C.A. § 49–233; Rules and Regulations of the State of Tennessee, Department of Education, Section 0520–1–701. The District has only about 750 pupils in its public school system. If the District has been deactivated, T.C.A. § 49–233 and the implementing regulations would bar its reactivation. We fail to find statutory or case law definitions of the words "deactivate" and "reactivate" as applied in the statute and regulations above cited. A review of the history of the District is important to a decision on this issue.

The District was created by Chapter 153, Private Acts of 1917. As authorized by statute, the District elected trustees, issued bonds, levied taxes and began the operation of its public school system. By Chapter 10, Private Acts of 1920 (Extra Session), an amendment to the act was passed which decreased the authorized tax rate under the 1917 Act from thirty cents on every $100 worth of taxable property to twenty cents per $100. By Chapter 467, Private Acts 1925, the legislature attempted to abolish all special school districts in Gibson County, Tennessee. The 1925 Act was declared unconstitutional in Melvin v. Bradford Special School District (1948) 186 Tenn. 694, 212 S.W.2d 668. In 1929 the legislature enacted Chapter 78, Private Acts 1929, which authorized the Gibson County Board of Education to invest money derived from tax levied and collected in the District in building and equipping a gymnasium in the City of Bradford, Tennessee, and to pay off any indebtedness of the Bradford School District by issuing warrants against the Bradford Special School District Fund.

According to the record, during the 1930's the Gibson County Board of Education began receiving state funds on behalf of the District. The record does not reveal how these funds were expended, but we must assume the monies were used for the benefit of the District.

Later, the legislature enacted Chapter 707, Private Acts of 1947, which amended the 1917 Act by changing the boundaries of the District and authorizing the issuance of $50,000 worth of bonds to be paid by a tax of forty cents per $100 of taxable property within the boundaries of the District. This Act was declared to be constitutional by the Court in Melvin v. Bradford Special School District, supra.

In 1969 the trustees of the District advised the county officials that all bonded debts of the District had been paid and stated that the further levy of special taxes on property within the District for District purposes could be discontinued. The special taxes on the property within the District were then discontinued. There was no proof submitted from which it could be inferred that any attempt was made at that time to dissolve the District.

The 1917 Act, as amended, was further amended by Chapter 371, Private Acts of 1974 to change the boundaries of the District. By Chapter 167, Private Acts of 1975, the boundaries of the District were again changed.

On February 13, 1975, a delegation from the District attended a meeting of the Gibson County Board of Education and explained their intention to construct a new high school building. The minutes of that board meeting recite that "[t]he delegation plans to reactivate the Bradford Special School District and to levy taxes on the assessible (sic) property in the district to

finance the planned building program [Emphasis added]." The county board voted unanimously "to back this plan of the Bradford Delegation." Much argument has been advanced by the plaintiffs that the word "reactivate" as used in the county board's minutes proves that the District by its admission was not then a legal entity and that in order for it to be reactivated it must comply with the provisions of T.C.A. § 49–233 and the regulations of the State Department of Education which implement that statute. All witnesses who were present at that county board meeting and who testified in this lawsuit stated that they did not recall any member of the District using the word "reactivate" in reference to the District. There are many other instances where words were used by the trustees of the District which the plaintiffs claim establish the fact that the District had no legal existence. Some of the minute entries of the meetings of the trustees of the District reflect that a trustee was to be appointed to "act as liaison and finance man to coordinate changeover from county operated system to locally operated system" (Minutes, May 11, 1977), and some entries describe the trustees as "assuming control of the Bradford Special School District from the County System" (Minutes, June 28, 1977). These expressions are not to be taken as proof that the District was not in existence nor operating its school system. These matters must be decided upon the total evidence presented.

The 1917 Act was further amended by Chapter 95, Private Acts 1975, wherein the District was authorized to issue bonds in an amount not exceeding $1,600,000 "for the purpose of constructing, improving and equipping school buildings and additions thereto . . . together with the purchase of necessary sites in connection therewith." A tax of $1.75 per $100 worth of taxable property within the District was authorized. The Act required a referendum and approval by a majority of the votes cast therein. A referendum was held and the bond issue was approved by a vote of 916 yes and 476 no.

Some of the present plaintiffs filed a lawsuit in federal court on the ground that Chapter 95, Private Acts 1975, was unconstitutional. That lawsuit was dismissed on December 17, 1975. See *Willis Partee, et al. v. Billy Pierce, et al.* filed in the United States District Court at Jackson, Tennessee. Thereafter, those plaintiffs filed a lawsuit in the state courts again attacking the constitutionality of the same private act. This Court in *Partee v. Pierce* (Tenn.App.1977) 553 S.W.2d 602, held that Chapter 95, Private Acts 1975, complied with constitutional requirements and dismissed the lawsuit. The District then notified the state board of education that it would, effective July 1, 1977, receive for itself all state funds to which the District was entitled. The present lawsuit was filed on November 21, 1977.

Gibson County and the chairman of the Gibson County Court were dismissed from this lawsuit on motion for summary judgment. The Trustee of Gibson County remains in the lawsuit as a stakeholder of certain funds which represent the share of a Gibson County bond issue which would go to the District if it is successful in this lawsuit.

The plaintiffs rely upon what they and their witnesses refer to as a "special contract or agreement" between the District and the Gibson County Board of Education whereby the latter named body would operate the District's school system. The plaintiffs insist that this arrangement was entered into sometime during the 1930's. Admittedly, the county board did receive state funds on behalf of the District. We hold, however, that the District never gave up its control over its school system. The trustees were regularly elected as provided for in the 1917 Act. They held meetings, kept minutes of the meetings, hired teachers, set salary supplements for teachers, maintained the buildings and did everything normally associated with the operation of a school system. The county board apparently paid the teachers from the money it received

from the state on behalf of the District, and the county superintendent apparently signed some diplomas issued to some graduating students of the District. Some county officials claimed that they thought the county board hired the teachers for the district. We hold that the proof preponderates against that contention.

We hold that, under this record, there was no contract between the District and the Gibson County Board of Education, or any other public body, to the effect that the District's school system would be operated under the supervision of the county superintendent as contemplated by T.C.A. § 49–401. We further hold that the plaintiffs did not prove an abolition of the District as allowed by T.C.A. § 49–402. The plaintiffs did not prove a transfer of the District's school system administration to the county school system as allowed by T.C.A. § 49–403. The plaintiffs did not prove by the minutes of the Gibson County Board of Education that that body hired any teacher for the District or expended any county funds on behalf of the District. In short, the plaintiffs have wholly failed to establish that the county board did anything other than collect state funds for the District.

On the other hand, the history of the District from its inception to the present establishes that it did not pay off its bonded indebtedness until 1969, thirty or more years after the plaintiffs claim the district was deactivated. Several legislative enactments have been passed over the years relative to the District which indicates that it was active and existing. This lawsuit appears to be but one more attempt by the plaintiffs to avoid the special school district tax levied on their property by Chapter 95, Private Acts of 1975. The plaintiffs' lawsuit is without merit. All assignments of error are overruled, and the judgment of the trial court is affirmed. The cost in this Court is adjudged against the plaintiffs and the sureties on their bond.

SUMMERS and EWELL, JJ., concur.