GIBSON COUNTY SPECIAL SCHOOL DISTRICT, Plaintiff-Appellant,

and

Bradford Special School District, Intervening Plaintiff-Appellant,

v.

Barbara PALMER, Trustee, Defendant-Appellee,

and

W.J. Michael Cody, Attorney General and Reporter, Intervenor-Appellee.

Supreme Court of Tennessee, at Jackson.

June 3, 1985.

L.L. Harrell, Jr., Trenton, Henry Haile, Nashville, for plaintiff-appellant Gibson County Special School District.

Hal Holmes, Trenton, for defendant-appellee.

Stephen Nunn, Asst. Atty. Gen., Nashville, for intervenor-appellee.

Tom W. Crider, Trenton, for intervening plaintiff-appellant Bradford Special School Dist.

## OPINION

BROCK, Justice.

During its 1984 session the Legislature passed Private Chapter No. 240 ("Bradford Special School District Act") which levied a property tax of $0.37 on every $100.00 of property in the Bradford Special School District in addition to the tax rate applicable to property in that District as adjusted after a property reappraisal. The constitutional dispute concerning this legislation focuses on Section 2 which provides, in pertinent part, that:

"The provisions of this Act shall not be put into operation until a majority of the qualified voters residing in the Bradford Special School District and voting in such an election on the question of the imposition and collection of this tax have expressed approval of putting the provisions of this Act into operation ..."

Section 3 of this legislation provides that if a portion of the Act is held invalid, such invalidity shall not affect the other provisions of the legislation which can be given effect without regard to the invalid portion of the Act.

In regard to the Gibson County Special School District, which is in Gibson County, as is the Bradford Special School District, the Legislature passed Senate Bill No. 2243, Private Chapter No. 241 ("Gibson County Special School District Act") which levied an identical property tax increase as set forth in the preceding legislation to property contained in the Gibson County Special School District. Section 3 of this Act provides, in pertinent part, that:

"The increase in tax authorized by this Act shall not be levied until it has been approved by a majority of the number of qualified voters residing in the Gibson County School District and voting in an election on this question ..."

Section 2 of the Gibson County Special School District Act contains a "severability clause" which is virtually identical to the provisions of Section 3 of the Bradford Special School District Act.

The trustee of Gibson County refused to effect the $0.37 tax increase without a referendum as required by this legislation. On September 13, 1984, the Gibson County Special School District filed suit in the Chancery Court for a declaratory judgment upholding the tax increase and rendering the referendum requirement of the legislation "null and void as a matter of law." The Attorney General intervened, denying that any provision of the legislation was unconstitutional. The Chancery Court issued a temporary injunction enjoining the Gibson County Trustee from levying or assessing any 1984 tax and from setting up or compiling any tax rates for 1984 pending the court's resolution of the litigation. The Chancery Court allowed the Bradford Special School District to intervene in the litigation and to contest the validity of the referendum provision contained in the "Bradford Special School District Act." The court issued a temporary injunction which similarly enjoined the Gibson County Trustee from assessing any 1984 tax or compiling any tax rates in regard to the property contained in the Bedford Special School District.

On October 19, 1984, Judge Dick Jerman, Jr., sitting by interchange, entered a final judgment, based upon the pleadings, stipu-

lations in writing and in open court and briefs filed by the parties, which determined that the legislation in controversy was constitutional and which dissolved the temporary injunctions which had been issued by the court. The Gibson County Special School District and Bradford Special School District filed a notice of appeal from the action taken by the trial court and appealed directly to this Court, pursuant to T.C.A., § 16–4–108, asking us to determine:

(1) Whether the referendum provisions of Chapter 240 and Chapter 241 of Tennessee Private Acts of 1984 are unconstitutional and (2) if so, should the Court apply the doctrine of elision and give effect to the other provisions of these Acts.

Prior to analyzing the constitutionality of the legislation in controversy, we will briefly review the statutes which govern special school districts in Tennessee. T.C.A., § 49–2–107, provides that any person owning property in a special school district which was created by private act is required to pay such taxes as are levied by the private act creating or amending the special school district. T.C.A., § 49–2–501(a)(1), abolishes all special school districts which are not taxing districts. Under these statutes, the legislature determines and levies the taxes in a special school district. However, if property owners are dissatisfied with the legislature's involvement in the special school district, T.C.A., § 49–2–501(a)(2), provides that any taxing district not encumbered by bonds or debt can upon 10 days' notice hold an election to determine if the taxing district should be abolished and the schools in the district should be placed under the management of the county board of education.

The Acts which are the subject of this appeal differ substantially from the statutes governing special school districts which have been described above, in that, the question of whether the tax increase specified in that legislation is to be levied is to be determined by a referendum in each separate school district. The appellants contend that this legislation is unconstitutional on the following grounds, among others: (1) the legislation is an improper delegation of legislative authority and (2) the legislation is an improper delegation of the legislature's taxing powers. A review of the pertinent authorities leads one to the inescapable conclusion that the legislation in controversy is unconstitutional under either of these two grounds.

■ It has long been the law in Tennessee that any legislation which derives its efficacy from a popular vote is an unconstitutional delegation of legislative power. *Lobelville Special School District v. McCanless,* 214 Tenn. 460, 381 S.W.2d 273 (1964); *Halmontaller v. City of Nashville,* 206 Tenn. 64, 332 S.W.2d 163 (1960); *Buena Vista Special School Dist. v. Board of Education Com'rs of Carroll County,* 173 Tenn. 198, 116 S.W.2d 1008 (1938). *Wright v. Cunningham,* 115 Tenn. 445, 91 S.W. 293 (1905) established this legal principle in Tennessee. In that case the court held that:

"On these grounds we are of the opinion that, under our Constitution, no legislative act can be so framed so that it must derive its efficacy from a popular vote. To be valid it must leave the hands of the Legislature complete; not in the sense that it may go into effect at once, it is true, but it must at birth bear the impress of sovereignity, and speak the sovereign will. If it contains within itself a condition or a contingency suspending to some future time, or to the happening of some future event, its obligatory force as a rule of action or conduct of the people for whom it was intended, that contingency or event must be one selected by the sovereign power itself as one, the happening of which shall render it immediately expedient that the suspension of the power inherent in the act shall cease and that it shall at once become operative as a rule of conduct for the government of the people. Obviously, if the contingency selected be the favorable vote of the people who are to be governed by the law, it is that vote which makes the statute efficacious as a law, and not the antecedent will of the Legislature, the

constitutional law-making power. It is said in some of the cases that the vote is the effect of the law, and not the law the effect of the vote; but we think this is a mere play on words, since it is clear that, if all laws were made dependent upon such a contingency, representative constitutional government would be destroyed." 91 S.W. at 298.

In *Clark v. State*, 172 Tenn. 429, 113 S.W.2d 374 (1937) this Court refined the legal principle which was established in *Wright v. Cunningham, supra.* In the *Clark* case, a "local option law" which allowed each county to hold an election to determine whether intoxicating liquors could be permitted to be manufactured in that county was found to be constitutional. The court reasoned that by permitting each county to hold an election, the act was effective regardless of the vote conducted in an individual county. A negative vote in Moore County did not render the legislation nugatory, it merely determined that whiskey could not be manufactured in Moore County. The court then restated the ruling in the *Wright* case as follows:

> "The above holding, we think, is in accord with the great weight of authority. It being the general rule, with which but few courts differ, that there can be no valid referendum to the voters of an entire State as to the adoption of a law applicable to the whole State, it must be likewise true that there could be no valid referendum to the voters of a single county as to the adoption of a law applicable alone to that county. The voters of Rhea county [the county involved in the *Wright* case] were authorized by the act to vote for or against the law. This amounted to a referendum to the voters of Rhea county on the question of the adoption of the law. Such a delegation of legislative authority is generally held beyond the power of the Legislature." 113 S.W.2d at 379.

If the question of whether a law becomes effective is determined by a popular vote of those who will be subject to the law, there has been an unconstitutional delegation of legislative authority. *Arthur v. State*, 148 Tenn. 434, 256 S.W. 437 (1923).

■ Section 2 of the "Bradford Special School District Act" conditions the effectiveness of the Act upon the approval of a majority of the voters in that special school district. This is a private act which applies only to the Bradford Special School District. An election is to be held which will determine whether the Act becomes effective. This amounts to a "referendum" to the voters of the Bradford Special School District "on the question of the adoption of the law." Accordingly, the Act is an inappropriate delegation of legislative power and is unconstitutional. *Lobelville Special School District v. McCanless, supra; Halmontaller v. City of Nashville, supra; Arthur v. State, supra.*

■ Section 3 of the "Gibson County Special School District Act" provides that "[t]he increase in tax authorized by this act shall not be levied until it has been approved by a majority of the number of qualified voters residing in the Gibson County School District and voting in an election on the question." This is a private act which applies only to the Gibson County Special School District. This legislation's sole purpose is to increase the tax in that special school district. The tax increase is conditioned on a popular vote in that special school district. Here also, an election will determine whether the Act becomes effective. This amounted to a referendum to the voters of the Gibson County School District on the question of the adoption of the law. Accordingly, this is also an inappropriate delegation of legislative power and the Act is unconstitutional. *Lobelville Special School District v. McCanless, supra; Halmontaller v. City of Nashville, supra; Arthur v. State, supra.*

In his argument that the two Acts in controversy are constitutional, the Attorney General relies upon a Court of Appeals case, *Partee v. Pierce*, Tenn.App., 553 S.W.2d 602 (1977). Section 5 of the legislation involved in that case provided that "the Act shall have no effect unless the

issuance of bonds therein authorized shall have been approved by a single majority of the qualified voters in the Bedford School District voting in such referendum election." 553 S.W.2d at 603. After reviewing *Wright v. Cunningham, supra,* the court stated that: "[t]his would appear to be quite a different situation than that involved in the case at bar, dealing with a private act applicable to a purely local situation. Moreover, the holding in *Wright v. Cunningham, supra,* has been considerably modified in later decisions, as will be pointed out in this opinion." 553 S.W.2d at 604. After reviewing cases which have applied the legal principle established by the *Wright v. Cunningham* case, the court refused to hold the legislation involved in that case unconstitutional, stating that:

"From this review of authorities, it clearly appears that our Supreme Court, in more recent decisions, has consistently held that Private Acts, of local application, giving to the people a right of adoption or rejection of rights or responsibilities therein provided is not an improper or unconstitutional delegation of legislative power." 553 S.W.2d at 605.

With all due respect to the Court of Appeals, the above holding ignores the refinement which was made by this Court in *Clark v. State, supra,* of the legal principle established in the *Wright v. Cunningham* case and the line of authorities which have held that a private act is an unconstitutional delegation of legislative authority when its efficacy is dependent upon a referendum in which the people who will be subject to the private act can vote on the question of the adoption of that law. *See Lobelville Special School District v. McCanless, supra; Halmontaller v. City of Nashville, supra; Arthur v. State, supra.* Indeed, several of the cases which the court relied upon in *Partee* in reaching the above quoted conclusion did not involve a claim that the legislation involved in that particular case was an unconstitutional delegation of legislative authority. *See Weil, Roth & Co. v. Mayor, Etc., of Town of Newbern,* 126 Tenn. 223, 148 S.W. 680 (1912) and *Melvin v. Bradford School*

*Dist.,* 186 Tenn. 694, 212 S.W.2d 668 (1948). Moreover, the remaining cases which were reviewed by the court do not support the conclusion which it reached, quoted above. Judge Nearn wrote a strong dissent to the majority opinion in the *Partee* case which we believe correctly interprets the legal principle established by the *Wright v. Cunningham* case as it has evolved through the various decisions rendered by this Court. In regard to the improper delegation of legislative authority issue, the *Partee* case was incorrectly decided and should be overruled.

The second constitutional argument presented by the appellants is that the legislation in controversy is an improper delegation of the legislature's taxing power. "No principle of organic law is more firmly imbedded in the jurisprudence of Tennessee ... than the principle that the legislature cannot delegate the taxing power beyond the extent expressly designated by the constitution." *B.O. Keesee et als. v. The Civil District Board of Education, et al.,* 46 Tenn. 128 (1868). Article 2, § 29 of the Tennessee Constitution permits the legislature to delegate its taxing power to counties and towns. It has been previously held by Tennessee courts that special school districts do not fall within the purview of § 29 of Article 2 and that legislation granting to special school districts the power to levy taxes is an unconstitutional delegation of the taxing authority. *Williamson v. McClain,* 147 Tenn. 491, 249 S.W. 811 (1923). It is important to note that the legislation in controversy does not merely delegate taxing authority to either the Bradford Special School District or the Gibson County Special School District; it goes one step further by making the levy of the tax increase hinge upon a popular vote of the voters in each special school district, and so has attempted to delegate its taxing authority to the people in the special school district. No provision in the Tennessee constitution expressly permits such a delegation of taxing authority to citizens in a special school district.

"The power of taxation is one that belongs to the state in its sovereign capacity. The exercise of power is legislative. The legislature has no authority to delegate this power of taxation except in such cases as the constitution authorizes." *Waterhouse v. Public Schools,* 68 Tenn. 398 (1876).

■ There being no express provision in the Tennessee Constitution which permits the legislature to redelegate its taxing authority to voters in a special school district, the legislation in controversy is unconstitutional.

The Attorney General argues that special school districts should be declared to be municipalities within the meaning of Article 11, § 9 (the Home Rule Amendment) of the Tennessee Constitution for purposes of legislation increasing their tax rates. This Court has previously defined the term "municipality" as used in the context of the Home Rule Amendment and has determined that special school districts do not fall within the definition of that term as used in Article 11, § 9, of the Tennessee Constitution. *Perritt v. Carter,* 204 Tenn. 611, 325 S.W.2d 233 (1959); *see also Fountain City v. Knox County,* 203 Tenn. 26, 308 S.W.2d 482 (1957).

■ The Attorney General's brief further states that "[t]he controlling case law, therefore, establishes that, at least in the context of a special school district, the levying of a property tax by the legislature may be made contingent on the vote of a referendum." We find no Tennessee case law which supports this statement. The Attorney General relies upon *Kee v. Parks,* 153 Tenn. 306, 283 S.W. 751 (1926). In that case, this Court upheld legislation which submitted the question of whether bonds should be issued to voters in a special school district. In upholding that legislation, the court noted that: "[h]ere the legislature fixed the tax in the act, and the decisions are uniform in holding that such power is vested in the legislature. The school district did not fix the rate or levy the tax; that was done by the legislature." 153 Tenn. at 311, 283 S.W. 751. According-

ly, it appears that the court in the *Kee* case upheld the legislation at least in part because the legislature had *not* delegated any of its taxing power to either the special school district or its voters. Moreover, the court in the *Kee* case upheld the legislation involved in that case on the ground that "[s]ince 1854 there have been unquestioned bond issue acts, of a local nature, both prior and subsequent to the adoption of the Constitution in 1870." 153 Tenn. at 314, 283 S.W. 751. The court found that the legislature's delegation of the determination of whether bonds should be issued in a local area to voters in that area had been "sanctioned by immemorial usage originating anterior to the constitution and continuing unquestioned thereunder." 153 Tenn. at 313, 283 S.W. 751. The same cannot be said for legislative delegation of taxing power to voters in a special school district. There is no evidence that this type of delegation has ever been sanctioned by "immemorial usage." Indeed, Tennessee case law established beyond a doubt that both prior to and since the adoption of the 1870 Constitution, the legislature has been permitted to delegate its taxing authority only in instances which have been expressly authorized by the terms of the Constitution in effect at that time. *B.O. Keesee et als. v. The Civil District Board of Education, et al., supra; Waterhouse v. Public Schools, supra; Reelfoot Lake Levee Dist. v. Dawson,* 97 Tenn. 151, 36 S.W. 1041 (1896); *Williamson v. McClain, supra; Humphreys County v. Burch,* 179 Tenn. 562, 167 S.W.2d 992 (1943). There being no express provision of the Tennessee Constitution which permits the legislature to delegate its taxing power to voters of a special school district and no "sanction by immemorial usage" of such a delegation of the taxing power, the legislation in question is clearly unconstitutional.

■ It should be noted that the Bradford Special School District also argues that Section 3 of the Bradford Special School District Act is inconsistent with the provisions of T.C.A., § 67–5–1704(c), and, accordingly, Section 3 of the Act violates

Article 11, Section 8 of the Tennessee Constitution. After reviewing the pertinent statutes, we find no inconsistency between Section 3 of the Bradford Special School District Act and Section 67–5–1704(c), which requires the legislature to set the increase in the tax rate in a special school district if additional revenue is required in a special school district following a general reappraisal of property values and an adjustment to the tax rate in that district. In Section 3 of the Bradford Special School District Act, the Tennessee legislature did in fact set the amount of the tax increase. Thus, it would appear that this argument by the Bradford Special School District is without merit.

Having determined that portions of the legislation in controversy are unconstitutional, the next issue is whether the doctrine of elision applies and the legislation can be given effect without regard to its unconstitutional sections.

The doctrine of elision is not favored. *Smith v. City of Pigeon Forge*, Tenn., 600 S.W.2d 231 (1980). The rule of elision applies "if it is made to appear from the face of the statute that the legislature would have enacted it with the objectionable features omitted, and those portions of the statute which are not objectionable will be held valid and enforceable, ... provided, of course, there is left enough of the act for a complete law capable of enforcement and fairly answering the object of its passage." *Davidson County v. Elrod*, 191 Tenn. 109, 232 S.W.2d 1 (1950). "However a conclusion by the court that the legislature would have enacted the act in question with the objectionable features omitted ought not to be reached unless such conclusion is made fairly clear of doubt from the face of the statute. Otherwise, its decree may be judicial legislation." *Davidson County v. Elrod, supra.*

The inclusion of a severability clause in the statute has been held by this Court to evidence an intent on the part of the legislature to have the valid parts of the statute in force if some other portion of the statute has been declared unconstitutional. *Cat-*lett v. State*, 207 Tenn. 1, 336 S.W.2d 8 (1960).

The question whether or not the doctrine of elision should be applied to the legislation involved in the case at bar is an extremely close one. There is case law in Tennessee which supports the proposition that the doctrine of elision should not be applied in the case at bar because the referendum portions of the legislation are interrelated with the other provisions of the legislation and are a condition which must be met before the legislation becomes effective. In *Arthur v. State, supra,* the Court held in regard to an act which undertook to create a new circuit court for Washington County, Tennessee, that a provision which conditioned the existence of the act upon a popular vote of the citizens of that county was unconstitutional. The court refused to elide the unconstitutional provision and give effect to the remaining portions of the legislation, holding that:

"The Legislature conditioned the life of the Act ... upon the result of the election provided for. There can be no mistake about this. It would be a palpable contempt of the legislative will for us to strike out the election provision from the act and give effect to the act regardless of the election.

"Moreover, this is not a case in which we hold that a particular section of the act is invalid, and to which we could apply the ordinary rules of elision. In this case we hold that the entire act is invalid, by reason of its dependence on section 20. Section 20 is not a separable part of the act. The entire act rests upon section 20, and when section 20 is removed the whole structure goes down." 256 S.W. at 438.

It is important to note that the court refused to apply the doctrine of elision in *Arthur v. State, supra,* despite the existence of a severability clause in the legislation that was before the Court in that case.

The appellants contend that the doctrine of elision is applicable to the legislation before the Court and rely upon the cases of *Fountain City v. Knox County, supra,*

and *Perritt v. Carter, supra.* Both of these cases involve legislation which was passed by a legislature which was under the mistaken impression that sanitary districts and special school districts were covered by the Home Rule Amendment of the Tennessee Constitution. In order to comply with the Home Rule Amendment election provisions were added to the legislation. The courts in those cases found that if the legislature had not been mistaken in regard to the applicability of the Home Rule Amendment the legislation would have been passed by the legislature without the election provisions and, accordingly, the courts elided the void provisions and gave effect to the remaining provisions of the legislation. These cases are not in point in regard to the case at bar. In regard to the legislation which is before the court, the legislature could not have acted under the mistaken impression that the Home Rule Amendment applied to special school districts. The *Perritt v. Carter* case which holds that the Home Rule Amendment does not apply to special school districts was decided in 1959, more than 25 years ago.

We continue to adhere to the decision and reasoning in *State v. Arthur, supra,* but believe that this case is distinguishable from that one. Here, if additional revenue is required in a special school district following a general reappraisal and adjustment of the tax rate under that statute, the Legislature is obligated to set the tax rate for that special school district at a level to generate the ad valorem revenue necessary for that special school district. T.C.A., § 67–5–1704(c). Thus, the purpose of the legislation before the Court was to carry out the legislature's obligation under T.C.A., § 67–5–1704(c), and to raise the tax rate in the Bradford Special School District and the Gibson County Special School District to provide the revenue necessary for those special school districts. If the unconstitutional provisions of these acts are excluded, the remaining portions of the acts are functional and will provide a raise in taxation in the special school districts which will generate the additional revenue necessary for those special school districts. Moreover, the legislation before the Court in this appeal contains a severability clause which indicates a specific legislative intent that the unconstitutional provisions were not an inducement for the passage of the legislation in controversy. For these reasons, we are convinced that the legislature would have passed these acts without the referendum provisions in obedience to T.C.A., § 67–5–1704(c). Without the unconstitutional provisions, this legislation is effective and fulfills the legislature's obligation under T.C.A., § 67–5–1704. The legislature has determined that the special school districts involved in this appeal need a tax increase and it has determined the amount of that tax increase. The inclusion of a severability clause reinforces the conclusion that the legislature intended the valid portions of this legislation to be given effect in the event that the referendum provisions were found to be unconstitutional.

■ Accordingly, we elide the unconstitutional referendum provisions of these Acts and hold that the remaining provisions are constitutional, valid and effective. This cause is remanded for any necessary further proceedings. Costs are taxed against defendant-appellee.

COOPER, C.J., and HARBISON, JJ., concur.

DROWOTA, J., files separate opinion concurring in part and dissenting in part in which FONES, J., joins.

DROWOTA, Justice, concurring and dissenting.

I concur in part and dissent in part for the following reasons.

I concur with the majority opinion in holding that the referendum provisions of Chapter 240 and Chapter 241 of Tennessee Private Acts of 1984 are unconstitutional on two grounds. First, a private act is an unconstitutional delegation of legislative authority when its efficacy is dependent upon a referendum in which the people who will be subject to the private act can vote

on the question of the adoption of that law. *Arthur v. State*, 148 Tenn. 434, 256 S.W. 437 (1923). The private acts in question apply only to the Bradford Special School District and the Gibson County Special School District. The legislation provides for an election to determine whether the Act becomes effective. This amounts to a referendum to the voters of the Special School Districts on the question of the adoption of the law. Thus, the Acts are an inappropriate delegation of legislative power and are unconstitutional. *Arthur v. State, supra.*

Secondly, the legislation is an improper delegation of the legislature's taxing powers. The legislature cannot delegate the taxing power beyond the extent expressly designated by the Constitution. As the majority opinion points out, there being no express provision in the Tennessee Constitution which permits the legislature to re-delegate its taxing power to voters of a special school district, the Acts in controversy are clearly unconstitutional.

The majority opinion having held the referendum provisions unconstitutional then finds the doctrine of elision applicable, thus giving effect to the remaining provisions of the Acts. I cannot agree that the doctrine of elision should apply in this case. The majority opinion admits that the question "in the case at bar is an extremely close one." However, the majority opinion seems to place great emphasis on the fact that the Acts in question contained a severability clause which "reinforces the conclusion that the legislature intended the valid portions of this legislation to be given effect in the event that the referendum provisions were found to be unconstitutional."

A similar severability clause existed in the legislation before the Court in *Arthur v. State, supra,* and Chief Justice Grafton Green in refusing to apply the doctrine of elision stated:

Just what effect is to be given such clauses in acts of the legislature we need not determine. We think it clear, however, that they must not be construed so as to defeat what appears to be the paramount legislative intent.

The legislature conditioned the life of the act before us upon the result of the election provided for. There can be no mistake about this. It would be a palpable contempt of the legislative will for us to strike out the election provision from the act and give effect to the act regardless of the election.

148 Tenn. at 437, 256 S.W. at 438.

It is well established in this state that the doctrine of elision is not favored. The trial judge in this case specifically found "that neither act would have been introduced into nor passed by the Tennessee General Assembly without the provision requiring voter approval by the citizens affected by the increase in tax liability contained in each act."

I think it is clear that the legislature would *not* have passed these acts without the referendum provisions. To eliminate from the act the requirement for a referendum will do violence to the clear legislative purpose and intent. I would therefore hold both Acts unconstitutional in their entirety.

I am authorized to state that Justice FONES concurs in this opinion.